## NATIONAL LABOR RELATIONS BOARD
### v. SEWELL MFG. CO.

No. 12206.

United States Court of Appeals
Fifth Circuit.

Feb. 11, 1949.

David P. Findling, Associate Gen. Counsel, NLRB, Ruth Weyand, Acting Asst. Gen. Counsel, NLRB, and Fannie M. Boyls, Atty., NLRB, all of Washington, D.C., and T. Lowry Whittaker, Chief Law Officer, NLRB, of Atlanta, Ga., for petitioner.

Shirley C. Boykin, of Carrollton, Ga., and Alexander E. Wilson, Jr., of Atlanta, Ga., for respondent.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

The National Labor Relations Board has petitioned this court, pursuant to section 10 (e) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 160(e), for enforcement of a Board order directed against the Sewell Manufacturing Company and issued by the Board on January 12, 1947. The order culminates Board proceedings instituted after a charge was filed by Amalgamated Clothing Workers of America, C. I. O., on March 9, 1946, alleging the respondent was guilty of unfair labor practices, violating sections 8(1) and (3) of the act, 29 U.S.C.A. § 158(1, 3).

Similar charges were filed against Warren and Ava Sewell, doing business as Warren Sewell Clothing Co., a partnership alleged to be partial successor to the Sewell Manufacturing Company and, as such, responsible for the acts of that corporation. The cases were joined and heard together before the Trial Examiner. He found the partnership was not a successor to the corporation, and the Board concurred in this finding. Hence, the order before us is not directed against the partnership but only against the corporation, its officers, agents, successors, and assigns.

The respondent, a Georgia corporation organized in 1931, is engaged in the manufacture of men's clothing. In 1944 and during part of 1945, it operated three plants, two in Bremen and one in Bowden, Ga. In June, 1945, manufacturing operations began to be curtailed, and in August of that year all three plants shut down because of a shortage of material.[1] During the shutdown, Warren Sewell, president of the corporation, sold all of his stock in the corporation and left to form a partnership with his wife, to manufacture clothing in competition with the corporation. The partnership purchased one of the Bremen plants and the plant in Bowden, from which plants certain of the machinery was removed by respondent and installed in its remaining plant, which was reopened on November 1, 1945, with an industrial capacity approximately equal to that which it had enjoyed when operating all three plants.

Early in 1944, the clothing workers' union began a drive to enroll the employees of the Sewell Manufacturing Company. By the summer of that year, there was a group working for the respondent who were interested in or were members of the union. The Board found that during the period from the initiation of the union activities until the date of shutdown various acts of the respondent were violations of the National Labor Relations Act. The Board also found that after resumption of operations on November 1, 1945, respondent violated the act by refusing to rehire three union adherents, Eppe Summerville, Troy Lee Payton, and Lonie Summerville. Based on its findings, the Board issued an order which directed the respondent to cease and desist from:

(1) Discouraging membership in the named union or any other labor organization by refusing to re-employ any of its members, or in any other manner discriminating in regard to hire or tenure of employment or condition of employment;

(2) Interrogating employees as to union membership, activities, or sympathies, or identity of members of the union;

(3) Warning employees that it will close its plant and take other economic reprisals if the plant personnel are organized;

(4) Reprimanding employees for engaging in union activities;

(5) Engaging in surveillance of union meetings;

(6) In any other manner interfering with, restraining, or coercing employees in their exercise of the right of self-organization, forming or joining labor organizations to bargain collectively, or engaging in other activities for mutual aid or protection as guaranteed by the act.

The order also required affirmative action by the respondent, directing it to:

(1) Offer the two Summervilles and Payton immediate and full reinstatement, making them whole for any loss of pay they may have suffered by reason of discrimination;

(2) Post prepared notices in its plant under certain conditions; and

(3) Notify the Regional Director of the Labor Board as to the steps they have taken in compliance with this order.

Before this court, the respondent argues, amongst other things, that the case against the partnership and the case against the corporation were wrongly consolidated before the Trial Examiner. This contention is without merit and need not be discussed further. The same treatment may be given that part of respondent's case relating to bias and prejudice of the Trial Examiner. Leaving these matters, we

---

[1] At the time of curtailment and shutdown all employees were discharged and given full release, as the management had no idea when it would be able to resume operations, if ever.

come to that portion of the case dealing with violations of section 8(1) of the act, allegedly committed by the respondent because of acts by its officers and supervisory employees.

The Board found and listed specific instances of coercion, anti-union statements to employees, reprimands for union activity, interrogations as to union conduct, etc. These findings are supported by substantial evidence, and the court is, therefore, precluded from reaching a different conclusion. These violations were all found by the Board to have occurred prior to the shutdown of the plant in 1945. There were no findings of similar violations after that time. While it may appear that to grant enforcement of the Board's order in this respect, nearly four years later, is unnecessary, it is now settled that a voluntary discontinuance of the violation by the respondent at a time prior to the institution of proceedings by the Board does not affect the jurisdiction of the Board to make an order barring resumption.[2] The principle supporting this rule is that the Board should have power to prohibit violations in the future as well as to stop present violations.

After the plant was reopened, Mr. Lovvorn, the general manager, took charge of re-employment. Of former employees, some fifty-nine were not rehired. Of these, the Board has picked three, Eppe Summerville, Troy Lee Payton, and Lonie Summerville, and has found that the failure to rehire in these three cases was a violation of section 8(3) of the act. The Board holds that the refusal to rehire was because of the union activities of the persons involved. It is necessary to examine the reasons relied upon by the Board in reaching this conclusion: In the case of Eppe Summerville, the Board, to support its conclusion, points to: (1) fourteen years' experience, (2) the hiring of new, unskilled personnel prior to the date on which Summerville got work elsewhere, (3) the failure to verify whether Summerville had other employment, (4) a statement by Mr. Lovvorn that Summerville's work was "one of the best," (5) Summerville's prominence in the union movement, and (6) "other unfair labor practices." The Board gave as reasons for its decision as to Troy Lee Payton, the following: (1) the "circumstances herein," (2) the fact that she was sufficiently competent to warrant re-employment, (3) that, without offering Payton employment, the respondent hired new and inexperienced workers, (4) that there was a lack of convincing evidence that the respondent knew of Payton's other employment, and (5) that Payton had been a capable employee. In the case of Lonie Summerville, the Board relies on: (1) her fifteen years' work for respondent, (2) no evidence that she had been warned to decrease production and improve her work while she was working for respondent, and (3) Mr. Lovvorn asked her if she was ready to come back to work and whether she had read the company's handbook of rules and regulations.

It is to honor the evidence relied on by the Board to designate it "negative evidence," for, in fact, it is not pertinent or relevant to the issue it is supposed to have settled. Nowhere is there a showing of actual discrimination in the so-called refusal to re-employ; neither is there any showing that these persons were discharged except at the time of shutdown when all employees were let go. In connection with this alleged discrimination, it must be remembered that some fifty-odd other persons who applied were not re-employed. These people were not all union members, and the testimony shows that no consideration was given union status in the hiring of personnel. In the case of each of the three persons cited by the Board as having been discriminated against, Mr. Lovvorn, in charge of the rehiring, made positive statements,

[2] In Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 217, 83 L.Ed. 126, Mr. Chief Justice Hughes, delivering the opinion of the Court said: " * * * With respect to industrial espionage, the companies say that the employment of 'outside investigating agencies' of any sort had been voluntarily discontinued prior to November, 1936, but the Board rightly urges that it was entitled to bar its resumption. Compare Federal Trade Commission v. Goodyear Tire & Rubber Co., 304 U.S. 257, 260, 58 S.Ct. 863, 864, 82 L.Ed. 1326, [1328]."

See also N. L. R. B. v. Ford Motor Co., 5 Cir., 119 F.2d 326.

462

not contradicted and unimpeached, that he had no knowledge of their union membership and activities. His statement was supported by proof that he had never fired them prior to the shutdown in August, 1945, that he had re-employed union members as well as non-union members, and that persons in both categories were not hired. Lined against the general and unspecific reasons relied on by the Board as showing discrimination in failure to rehire the three named persons, respondent has shown cogent reasons for its procedure: Eppe Summerville performed an operation joining flies which was not begun until February 1, 1946, at which time she was employed in another mill. Respondent was a party to a gentlemen's agreement that employees would not be pirated from another establishment, and so Lovvorn felt that Eppe Summerville was no longer eligible for employment. Troy Lee Payton, Lovvorn said, did not do as good work as other girls similarly employed and, also, she was employed in another mill within twenty-nine days of the initial reopening of respondent's business. Lovvorn stated he did not rehire Lonie Summerville because her work was poor. Lonie's immediate superior buttressed this testimony by saying that, though the girl was capable of good work, she had been turning out consistently poor work for several months prior to the close of business. Complaints as to the quality of work must be read in connection with the testimony given showing the company was endeavoring to put out a superior quality garment. The respondent had the legal right to chose its employees except that it could not discriminate against union members because of their union status. No evidence shows there was such discrimination by the respondent when it did not rehire the Summervilles and Payton; rather, the evidence does show cogent reasons, within the discretion of the company, for not hiring them.

Under the National Labor Relations Act, this court has the duty to see that the act "is properly and fairly applied, and not brought into disrepute by unlawful or palpably unjust applications of it." N. L. R. B. v. McGough Bakeries Corp., 5 Cir., 153 F.2d 420, 421. Since we find no evidence

to support the charges of discrimination in failing to rehire the three named persons, it is incumbent upon us to deny enforcement of that part of the order requiring their re-employment and compensation.

The Board's order is modified to exclude that portion requiring the rehiring and compensation of Eppe Summerville, Troy Lee Payton, and Lonie Summerville, and, as modified, the order to enforce is granted.