**D. H. HOLMES CO., Ltd. v. NATIONAL LABOR RELATIONS BOARD.**

No. 12745.

United States Court of Appeals
Fifth Circuit.

Feb. 18, 1950.

Rehearing Denied March 28, 1950.

Leon Sarpy, New Orleans, La., for petitioner.

Andrew P. Carter, Attorney, New Orleans, La., David P. Findling, Assoc. Gen. Counsel, Washington, D. C., A. Norman Somers, Asst. Gen. Counsel, Washington, D. C., for National Labor Relations Board.

Before HUTCHESON, Chief Judge, and HOLMES and McCORD, Circuit Judges.

McCORD, Circuit Judge.

This is a petition by D. H. Holmes Company, Ltd., a Louisiana Corporation, to review and set aside an order of the National Labor Relations Board issued against petitioner pursuant to Section 10(c) of the National Labor Relations Act, as amended, for certain alleged unfair labor practices. 29 U.S.C.A. § 141 et seq.

The question presented is whether the findings of the Board to the effect that petitioner has violated Sections 8(a)(1), 8(3) and 8(5) of the Act are supported by substantial evidence on the record considered as a whole.

The material facts, as found by the Board and revealed by the record, may be briefly summarized:

On October 2, 1946, A. H. Buckley, a business representative of the Bakery and Confectionery Workers' Union, A. F. L., secured signed union application cards from thirteen out of twenty company bakery employees designating the union as their exclusive bargaining representative in all negotiations with the company. Shortly after the union cards were signed, several of the employees informed Manager Dictl that a majority of the bakery employees had joined the union. On the following morning all of the employees in the bakery department of the company were assembled and addressed by the company secretary, H. M. Evans, who inquired as to the disturbance in the bakery shop and asked the employees what was going on. When some of them made complaints and revealed their grievances, Evans informed them that something would have been done had they come to him direct. After reminding all of the employees of the various benefits they were receiving from the company, he warned them that the bakery might be discontinued if the union did not meet with company approval.

On October 4, 1946, the union representative, Buckley, met Mr. Lienhard, the company president, and after claiming to represent a majority of the bakery employees, he requested that the company recognize and bargain with the union. When President Lienhard questioned the majority status of the union, Buckley suggested having the signatures on the union cards checked for authenticity against those on the company pay roll. President Lienhard, however, insisted on an election as the only effective way to determine the majority status, and the conference was concluded without agreement being reached. Several subsequent conferences between President Lienhard and Buckley resulted in a deadlock and stalemate in negotiations on this same score. Finally, President Lienhard agreed to hold a meeting of the employees at the bakery after hours one evening, at which time those employees who had signed the union cards were to be given an opportunity either to renounce and disclaim the union, or to reaffirm their signatures and membership therein. That after-

noon, however, the company board of directors vetoed the proposed meeting, but the cancellation by the company came too late to prevent the employees from gathering at the store that night. When they were informed upon arrival that the proposed meeting had been called off by the company, they went to the union hall and all employees who had signed cards voted to strike the next day because "they felt like the Company was just giving them the run around and wasn't going to do anything". These employees did go out on strike the following day, and only a minority of the bakery employees continued to work while the strike lasted.

On October 25, 1946, President Lienhard and Buckley met in an effort to settle the strike, and it was agreed that the union would call off the strike and remove the pickets if the company would reinstate the strikers and hold a consent election. The pickets were thereafter removed, and the union confirmed this agreement by wire. When they first returned to the store, however, the workers who had gone out on strike were turned away from the bakery, but a few days thereafter the company reaffirmed its agreement to reinstate the striking employees and hold a consent election, and all the workers were again permitted to return to work.

On November 4th, 1946, an agreement concerning the proposed consent election was signed, and the election was scheduled to be held two days later. At that time one of the strikers who had been reinstated, Mary Wilson, was told by the bakery manager to report to President Lienhard. There is evidence that the manager stated to this employee that she should be "sensible" and "go along" with the company so that she would achieve "good standing". President Lienhard later told her that the company wished to pay the striking employees for the week they were not allowed to work, and promised that she would receive this money on the following day. He asked her what the union had offered, and offered to raise her wages. There is evidence that he also told her that the company would probably close the bakery if the union won the election, and that he

hoped she would vote along with the company.

On the next day, November 5th, President Lienhard called to his office for individual conferences all the other employees who had gone out on strike. He gave all but one of them substantial wage increases, and paid them for the wages lost during the week they were not allowed to work, as he had done with the employee, Mary Wilson. It was shown that he questioned them as to their union membership and their reasons for joining the union and that, after reviewing and enumerating all of the benefits they then enjoyed from the company, he warned that a union victory in the election would probably result in the company closing the bakery.

On November 6th, 1946, the consent election was held at which 8 votes were cast for the union and 9 votes against it, with 2 of the remaining ballots challenged. Having lost the election, the union later filed with the Board a request for withdrawal of its representation petition "without prejudice". On the next day it filed with the Regional Director of the Board the charges giving rise to these alleged unfair labor practices. The Board later entered an order permitting the withdrawal of the petition in the representation proceeding "with prejudice", but did not at that time explain the significance of this ruling.

 We are of opinion the finding of the Board to the effect that petitioner has infringed Section 8(a) (1) of the Act is supported by substantial evidence. N. L. R. B. v. Asheville Hosiery Co., 4 Cir., 108 F.2d 288, 293; American Smelting & Refining Co. v. N. L. R. B., 5 Cir., 128 F.2d 345, 346; Medo Photo Supply Corporation v. N. L. R. B., 321 U.S. 678, 686, 64 S.Ct. 830, 88 L.Ed. 1007; Humble Oil & Refining Co. v. N. L. R. B., 5 Cir., 113 F.2d 85, 92; N. L. R. B. v. Sewell Mfg. Co., 5 Cir., 172 F.2d 459, 460, 461. The evidence as to the coercive remarks by company officials, as revealed by the veiled threats to close the bakery in the event the union won the election, and the granting by the company of wage increases and back pay awards on the day before the election clearly justify the finding of the Board in this regard. N. L. R. B. v. Gate City Cotton Mills, 5 Cir., 167 F.2d 647, 649; N. L. R. B. v. American Furnace Co., 7 Cir., 158 F.2d 376, 379; N. L. R. B. v. Williamson-Dickie Mfg. Co., 5 Cir., 130 F.2d 260, 262; N. L. R. B. v. Illinois Tool Works, 7 Cir., 153 F. 2d 811, 814.

 Viewing the record as a whole fully and fairly in its entirety, however, we find no substantial basis in the evidence to support the finding that petitioner violated Section 8(a) (3) of the Act by the alleged lock-out and failure to reinstate the strikers, immediately upon their application following the agreement to terminate the strike. In this connection, the record reveals without dispute that no striking employee was denied the right to return to work for more than a few days, and that all but one of the employees who went out on strike were paid for the entire time lost. Moreover, there is no issue before us as to the discriminatory discharge of any employee, or claim for reinstatement or back pay, and the record shows that charges of this nature as to two of the employees have been voluntarily dismissed by the Board. We are further constrained to believe that the specific finding of the Board that petitioner unlawfully refused to bargain with the union on and after October 4th, 1946, in alleged violation of Section 8(a) (5) of the Act, is unwarranted in the light of a fair appraisal of the evidence. The record as a whole warrants the conclusion that a *bona fide* dispute as to the majority status of the union did exist prior to the election, and that in all probability the respondent entertained a good faith doubt as to whether, under the circumstances, it was required to recognize the union as the accredited bargaining representative at that time. May Dept. Stores v. N. L. R. B., 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145; see also, Matter of Artcraft Hosiery Company, 78 N.L.R.B. 333. However, to the extent that the consent election revealed a loss in union support, we hold that such was attributable to unfair labor practices on the part of respondent, and that the election is therefore not a bar to a remedial order

here. Peoples Motor Express, Inc. v. N. L. R. B., 4 Cir., 165 F.2d 903; Franks Bros. Co. v. N. L. R. B., 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020.

■ We find no merit in the contention that the dismissal of the petition in the representation proceeding would bar prosecution for the unfair labor practices. See Wallace Corp. v. N. L. R. B., 323 U.S. 248, 253, 65 S.Ct. 238, 89 L.Ed. 216; Warehousemen's Union v. N. L. R. B., 74 App. D.C. 28, 121 F.2d 84, 92-94; N. L. R. B. v. Clark Bros. Co., 2 Cir., 163 F.2d 373, 375; N. L. R. B. v. T. W. Phillips Gas & Oil Co., 3 Cir., 141 F.2d 304, 305, 306.

The order of the Board is modified as may be necessary to conform with the views herein expressed, and as thus modified the same is hereby enforced.