**NATIONAL LABOR RELATIONS
BOARD
v.
CALDARERA et al.
No. 14918.**

United States Court of Appeals
Eighth Circuit.

Feb. 3, 1954.

Rehearing Denied Feb. 26, 1954.

Lawrence B. Burrow, Jr., Little Rock, Ark. (Lawrence B. Burrow, Sr., and Moore, Burrow, Chowning & Mitchell, Little Rock, Ark., were with him on the brief), for respondents.

Fannie M. Boyls, Atty., National Labor Relations Board, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Melvin Spaeth, Atty., National Labor Relations Board, Washington, D. C., were with her on the brief), for petitioner.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This matter is before us on petition of the National Labor Relations Board for a decree enforcing its order requiring Mike and Joe Caldarera, partners, doing business as Falstaff Distributing Company, respondents, to cease and desist from certain unfair labor practices of which the Board found respondents guilty. Respondents at all times here pertinent were beer distributors in the city of Little Rock, Arkansas. They employed certain employees known as driver-salesmen. In the latter part of August or first part of September, 1951, there was inaugurated a campaign to organize employees of beer distributors in Little Rock, Arkansas, including employees of respondents. It is in connection with this campaign that the conduct of respondents is alleged to have been violative of various provisions of the National Labor Relations Act, 29 U.S. C.A. § 151 et seq.

On September 17, 1951, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers, Local 878, A.F.L. filed its petition for a representation election. While this petition was on file but before it had been acted upon by the Board an attorney for the union and a Mr. Bailey, one of the Board's examiners, called at the office of

respondents and had a conversation with respondent Mike Caldarera. It is claimed that the attorney on behalf of the union purporting to represent a majority of respondents' employees made demand for collective bargaining and a recognition of the union as the bargaining agent of respondents' employees. The Board so found but the finding is here assailed by respondents as not being sustained by substantial evidence. On January 17, 1952, a Board election was held with all four eligible drivers voting. The election resulted in a tie vote and it was later set aside by the Board on the ground that respondents had been guilty of unfair practices in connection with the election. A new election was ordered to be held but has never been held so far as the record discloses.

On June 30, 1952, the Board issued its complaint based on charges filed by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers, Local 878, A.F.L. In this complaint it was alleged that on or about October 18, 1951, and continuously thereafter, respondents interfered with, restrained and coerced its employees in their right to bargain collectively through representatives of their own choosing; that from on or about September 4, 1951, and continuously thereafter respondents committed, authorized, instigated or acquiesced in certain acts of conduct, including the following: (a) Inquired, questioned and interrogated employees about their own and other employees views of membership in and activities on behalf of the union, (b) Warned and threatened its employees with discharge and loss of other benefits because of their membership in and activities on behalf of the union, (c) Made promises of benefits to employees if the employees would cease activities on behalf of the union, (d) Warned and threatened employees that the company would close down if the union came in, (e) Warned and threatened its employees that the trucks would not "roll" if they attended union meetings, (f) Coerced employees to forego rights of concerted action for the better-

ment of their wages and working conditions, and (g) By other acts, conducts and conversations interfered with, threatened and coerced its employees as to their right to engage in activities on behalf of the union; that respondents did on or about October 18, 1951, reduce the wages of certain named employees for the reason that they joined or assisted the union or engaged in other concerted activities for the purpose of collective bargaining or other mutual aid or protection; that respondents from on or about September 20, 1951, refused and continued to refuse to bargain collectively in good faith with the union with respect to rates of pay, hours of work, and other conditions of employment; that respondents by the acts described did thereby engage in and is thereby engaging in unfair labor practices within the meaning of Sections 8 (a)(1), 8(a)(3), and Section 8(a)(5) of the National Labor Relations Act.

Hearing was had before an examiner who made report to the Board sustaining all the charges contained in the complaint. Respondents filed exceptions to the report and recommendations of the trial examiner. The exceptions were overruled by the Board and the report of the examiner approved except as to matters not here material. The Board in substance found that respondents had violated Section 8(a)(1) of the Act by interfering, coercing and restraining employees in the exercise of rights guaranteed by Section 7 of the Act, had violated Section 8(a)(3) of the Act by discriminating with regard to hire or tenure or terms or condition of employment, and Section 8(a)(5) of the Act by refusing to bargain collectively with representatives of employees. Based on the Board's findings it issued its order that respondents:

"1. Cease and desist from:

"(a) interrogating employees concerning their union membership and activities;

"(b) promising benefits on condition that employees discontinue union membership and other pro-

tected concerted activities, including the institution and prosecution of Wage-Hour actions;

"(c) threatening and/or taking reprisals, including layoffs, discharges, shutdowns, wage reductions, because of union membership and other protected concerted activities;

"(d) in any other manner, discouraging union membership by discriminating in regard to hire or tenure of employment or any term or condition of employment;

"(e) refusing to recognize and bargain with International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local No. 878, AFL, as the statutory bargaining representative of their beer driver-salesmen, including relief drivers and warehousemen, but excluding office and clerical employees and supervisors as defined in the Act;

"(f) In any other manner, interfering with, restraining or coercing their employees in the exercise of the right to self-organization, to form labor organizations, to join or assist International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local No. 878, AFL, or any other labor organization, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, or to refrain from any or all such activities, except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment, as authorized in Section 8(a)(3) of the Act.

"2. Take the following affirmative action which the Board finds will effectuate the policies of the Act:

"(a) Make whole Marion McReynolds, Winn Burgin, and Russell Fugatt and furnish earnings information to the Board, upon request, as set forth above and in the section of the Intermediate Report entitled 'The Remedy';

"(b) Upon request, bargain collectively with Teamsters Local No. 878, AFL, as the exclusive representative of the employees in the above-described appropriate unit in respect to rates of pay, wages, hours of employment, and other terms and conditions of employment and if an understanding is reached embody it in a signed agreement; * * *."

Respondents were also required by the Board to post appropriate notices. Further facts will be developed in the course of this opinion.

Respondents resist the enforcement of the Board's order only as to paragraphs 1(e) and 2(b). Paragraph 1(e) ordered respondents to cease and desist from refusing to recognize and bargain with the union as the representative of its employees. Paragraph 2(b) ordered respondents upon request to bargain collectively with the union as representative of its employees.

■ It is strenuously argued by respondents that there is no substantial evidence upon which to find them guilty of refusing to bargain with the union. The only occasion on which it is claimed that such a request was made and refused was on or about September 20, 1951, when one John Shamburger representing the union had a conversation with Mike Caldarera. The evidence relied upon to support this finding is that given by the witness Shamburger. He testified that accompanied by Mr. Bailey, a field examiner for the Board, he called upon Mike Caldarera and informed him that he represented the union and that that organization represented the majority of his employees "and asked him if he would like to do business with us." The witness was then interrogated, "What was his reply, do you recall?" To which he answered, "For the life of me I can't recall his exact reply or even any words he might have used, but I

took his answer to be very definitely in the negative. Whether he said flatly 'no', I am sure that he didn't, but what his words were I don't know or I do not recall." On cross-examination the witness was asked, "But you do recall that you specifically asked to bargain with the Caldareras for the Teamsters?" His answer was, "Mr. Burrow, I wouldn't say that because I do not definitely recall. I do recall attempting I suppose, to simplify it for Mr. Caldarera. I asked if he would care to do business with us, or words to that effect. I supposed that he would actually know what it meant technically to demand bargaining anyway." On redirect examination Shamburger testified, "* * * He didn't seem to understand what we were doing there or what my purpose was, but he didn't seem to question in the slightest my announcement to him that we represented the majority of his people." On recross examination he stated among other things, in response to a question of whether Mike Caldarera suggested he contact the firm of Moore, Burrow, Chowning & Mitchell, "As I recall, he didn't make that statement to me. I was advised by Mr. Bailey that he made that suggestion to Mr. Bailey. I was present, but that was finally his suggestion. That culminated or kept off his suspicion. He didn't seem to understand what we were doing and he suggested that to Mr. Bailey, so I was advised by Mr. Bailey. I did not distinctly hear the remark." It is quite apparent from the record and particularly the testimony of Mr. Shamburger that Mike Caldarera is uneducated and without experience in matters concerning which he was being interrogated. In the first place Mr. Shamburger did not ask him to bargain with the union, but asked whether he would "care to do business with us." This might have meant doing business with Shamburger and Bailey who were the only persons present and there was nothing to indicate what type of business he had in mind. Mr. Shamburger frankly states that Mike Caldarera did not seem to understand and it is not strange that in these circum-

stances in his apparent bewilderment he suggested that Shamburger take the matter up with Mr. Burrow, his attorney. This suggestion, however, was not acted on by Shamburger or by anyone else acting on behalf of the union. There was no request to bargain with the union, neither was there any refusal to bargain with the union. It is argued that the circumstances indicate that the respondents would not in any event have bargained with the union had the request been made, but that we think is quite beside the question. Respondents could not properly be found guilty of refusing to bargain with a union representing a majority of employees without a request or demand. There being here no such request, there could not have been a refusal and this thought is strengthened by the fact that the union's attorney was referred to respondents' attorney. So far as respondents were concerned the question was an open one which probably could have been determined one way or the other had the union's representative pursued the course suggested by respondents. Certainly respondents should not be ordered to cease and desist from doing that which they have never done, to-wit, refused to bargain with the union, Paragraph 1(e) should therefore be deleted from the order.

[2] ■ remains to consider the effect of the lack of demand by the union and refusal by respondents to bargain upon paragraph 2(b). A hearing was had in this case and the Board found and this finding is not contested that the union represented a majority of the employees of respondents. That being true, if proper request be made upon respondents by representatives of the union it would manifestly be the duty of respondents to recognize the union as their employees' bargaining agent. Texarkana Bus Co. v. National Labor Relations Board, 8 Cir., 119 F.2d 480, 484. This provision of the order does not depend upon a previous demand by the union or a refusal by respondents. It looks to the future and only in the

event such request shall be made will respondents be required to bargain collectively with the union. So far as this requirement is concerned it is embodied in the words that respondents shall *"upon request,* bargain collectively with Teamsters Local No. 878, AFL, as the exclusive representative of the employees in the above described appropriate unit in respect to rates of pay, wages, hours of employment, etc. * *"* (Emphasis supplied.)

In Texarkana Bus Co. v. National Labor Relations Board, supra, we considered this question and in the course of the opinion said:

> "Our conclusion in this matter will eliminate subdivision 1(b) of the Board's order, but will not affect subdivision 2(d) of the order because the Board has found, and its finding is sustained by substantial evidence, that the Amalgamated, on June 13, 1939, and at all times thereafter, was the duly designated representative of a majority of the Bus Company's employees for collective bargaining."

The order of the Board will therefore be modified by deleting paragraph 1(e), and as so modified will be enforced.

Phillips, Chief Judge, dissented in appeal number 4712.