**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**DELIGHT BAKERY, INC., Respondent.
No. 16091.**

United States Court of Appeals
Sixth Circuit.

Dec. 3, 1965.

Elliott Moore, N.L.R.B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Allen M. Hutter, Attorney, N. L. R. B., Washington, D. C., on brief, for petitioner.

Jack R. Clary, Grand Rapids, Mich., Warner, Norcross & Judd, by Thomas McNamara, Grand Rapids, Mich., on brief, for respondent.

Before EDWARDS and CELEBREZZE, Circuit Judges, and CECIL, Senior Circuit Judge.

EDWARDS, Circuit Judge.

In this case the National Labor Relations Board seeks enforcement of its order requiring respondent to cease and desist from certain unfair labor practices and to bargain collectively with the Teamsters Union.[1]

This is the most sophisticated unfair labor practice case which this court has recently reviewed, but the basic principles involved are quite familiar.

Respondent in this case is a family-operated, small bakery. At the times in question it had ten full-time employees, twelve part-time employees, and four full-time drivers. In December of 1962 nineteen of these employees signed Teamster Union cards and the Teamsters Union demanded recognition and collective bargaining.

1. General Teamsters Union, Local No. 406, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Inc.

A dispute immediately arose as to what the appropriate collective bargaining unit would be. The dispute wended its way through hearings before the State Labor Mediation Board before finally being resolved in the instant proceeding before the NLRB by the Board order, which excluded the drivers.

While the dispute over the proper bargaining unit was in progress, the respondent refused all recognition and bargaining. But in this interim the company, advised by a labor consulting firm and by counsel who argued this case, had a series of contacts with the employees in meetings, consultations and interrogations. None of the heavy-handed, coercive devices so familiar to NLRB records in this court were employed, however. Employees were carefully told that they had the right to belong to the union; that any meeting with the employer was voluntary; that there would be no reprisals.

But respondent or its agents also suggested an employee committee to take up grievances with the company; on at least two occasions initiated employee votes on the question of a strike or of the union (the last of these was held in the company's main office); discussed in employee meetings and with the committee many collective bargaining issues; and resolved one grievance (the question of free uniforms for the inside bakery workers) by granting the same.

When an unfair labor practice charge was filed and heard, the Trial Examiner found as facts that respondent had directed and promoted the employee committee, had granted benefits and had interrogated and polled its employees in order to influence their choice of a union. He then held that these measures were unfair labor practices; that respondent had "utilized the time afforded it by the union's resort to the Michigan State Labor Mediation Board processes to endeavor to undermine the union," and that these efforts caused the loss of the union's majority. He thereupon entered recommendations that the respondent be required to cease and desist from the de-

scribed practices and, further, be required to bargain.

The NLRB in a brief order adopted the findings and recommendations of the Trial Examiner in toto.

Before this court respondent contests the facts as found by the Trial Examiner and the Board and disputes the inferences drawn therefrom.

█ The record we have reviewed does not compel the findings and inferences we have recited. Nor are we certain that had we heard the witnesses, we would have reached the same results. Each of the company's acts could have been interpreted differently. But clearly, there is also substantial support in the record for the Board's findings of fact. For example, while the respondent argues that the committee idea was entirely that of the employees, the record is clear that it was formed after the company posted this notice on company stationery on the company bulletin board:

"NOTICE TO ALL EMPLOYEES:

"WE WOULD LIKE TO HAVE A COMMITTEE APPOINTED TO MEET WITH MR. JACK CLARY, TUESDAY, JAN. 15, 1963, AT 8:00 P. M. BAKERY OFFICE.

"THIS MEETING IS TO DISCUSS AND ESTABLISH COMPANY POLICIES, ETC."

Further, when respondent, in close proximity to a newly initiated union organizing campaign, suddenly exuded a previously undemonstrated solicitude for communicating with its employees and meeting their problems (while disputing the bargaining unit and refusing to bargain with the union), we find it hard to say that an NLRB inference of unfair labor practice motivation lacks support in the record.

█ It is true that respondent attributed its actions to economic problems and to labor relations advice sought prior to the union campaign. But explanations for sudden solicitude or sudden hostility openly demonstrated immediately after

notice of a union organizing campaign cannot properly be weighed against an unfair labor practice charge without taking into account the element of proximity to the union campaign. N. L. R. B. v. Iron City Sash & Door Company of Johnstown, 352 F.2d 437 (C.A.6, 1965). Reviewing this entire record, we find substantial evidence to support the findings of fact and inferences upon which the order of the Board was based. Joy Silk Mills v. N. L. R. B., 185 F.2d 732 (C.A.D.C.1950), cert. denied, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350 (1951); Universal Camera v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■ The second and more difficult question posed by this case is whether or not the Board properly ordered the company to bargain with the union. The Trial Examiner and the Board found, as to this question, that the respondent had no reason for any good faith doubt of the union's claimed majority status as of the date of its demand for recognition and bargaining. As to this finding we note that the signed representation cards constituted a substantial majority, the language on the cards was unequivocal, and the record discloses no material misrepresentations. N. L. R. B. v. Cumberland Shoe Corp., 351 F.2d 917 (C.A. 6, 1965).

However, the Trial Examiner and the Board also found that the bargaining unit insisted upon by the union was not a traditionally appropriate one and that respondent did have reason for a good faith doubt concerning it. The Board order dismissed that portion of the charge which alleged refusal to bargain in violation of § 8(a) (5) of the National Labor Relations Act. Thus the order to bargain, if justified, must be justified entirely as a result of § 8(a) (1) violations.

Respondent and counsel for some of respondent's employees (who was authorized to file a brief *amicus curiae*) contend that the bargaining requirement is "revolutionary" and far more severe in its effects than the § 8(a) (1) violations warrant. In this regard N. L. R. B. v. Flomatic Corporation, 347 F.2d 74 (C.A. 2, 1965) is cited to us.

On the other hand, the petitioner cites D. H. Holmes Co. v. National Labor Relations Board, 179 F.2d 876 (C.A.5, 1950), as an example of a bargaining order ultimately addressed only to § 8(a) (1) violations,[2] and relies upon the general language of the United States Supreme Court in recognizing a wide discretion in the NLRB to devise remedies for violations of the statute. N. L. R. B. v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380 (1942); Franks Bros. Co. v. N. L. R. B., 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020 (1944).

In this latter case, dealing with the discretion of the NLRB, Justice Black, for a unanimous Court, said:

"One of the chief responsibilities of the Board is to direct such action as will dissipate the unwholesome effects of violations of the Act. See 29 U.S.C. § 160(a) and (c). And, 'It is for the Board, not the courts to determine how the effect of prior unfair labor practices may be expunged.' International Association of Machinists v. National Labor Relations Board, 311 U.S. 72, 82 [61 S.Ct. 83, 85 L.Ed. 50].

"That determination the Board has made in this case and in similar cases by adopting a form of remedy which requires that an employer bargain exclusively with the particular union which represented a majority of the employees at the time of the wrongful refusal to bargain despite that union's subsequent failure to retain its majority. The Board might well think that, were it not to adopt this type of remedy, but instead order elections upon every claim that a shift in union membership had occurred during

2. For the nature of the remedial order, see D. H. Holmes Co., Ltd., 81 N.L.R.B. 753 (1949).

proceedings occasioned by an employer's wrongful refusal to bargain, recalcitrant employers might be able by continued opposition to union membership indefinitely to postpone performance of their statutory obligation. In the Board's view, procedural delays necessary fairly to determine charges of unfair labor practices might in this way be made the occasion for further procedural delays in connection with repeated requests for elections, thus providing employers a chance to profit from a stubborn refusal to abide by the law. That the Board was within its statutory authority in adopting the remedy which it has adopted to foreclose the probability of such frustrations of the Act seems too plain for anything but statement. See 29 U.S.C. § 160(a) and (c)." Franks Bros. Co. v. Labor Board, supra, 321 U.S. at 704–705, 64 S.Ct. at 818–819.

We note no language either in the Franks or the Lorillard case which restricts the discretion of the NLRB in fashioning remedies to any specific type or types of NLRA violations.

In our instant case we have no doubt that the NLRB had a right on this record to conclude that respondent's illegal interference with its employees' rights to organize and bargain collectively did cause the union's loss of majority status. If this is so, it seems to be well within the NLRB's discretion to seek a remedy which would effectively restore the status quo ante. It seems most unlikely that a simple cease and desist order could be expected to accomplish this result.

The only case which is cited to the contrary of this view is N. L. R. B. v. Flomatic Corporation, supra. In Flomatic the majority relied heavily on the facts that the union had not requested bargaining and that respondent's acts had not caused the loss of the union majority. In our instant case the NLRB, on substantial evidence, found contrary facts as to both of these points.

Moreover, we find no novelty (let alone "revolution") in the proposed remedy. Three Circuit Courts of Appeal have upheld NLRB remedial orders in situations involving violations of § 8(a) (1) where the whole record disclosed no § 8(a) (5) refusal to bargain. D. H. Holmes Co. v. N. L. R. B., supra (C.A.5, 1950); Summit Mining Corporation v. N. L. R. B., 260 F.2d 894 (C.A.3, 1958); N. L. R. B. v. Caldarera, 209 F.2d 265 (C.A.8, 1954). See also Bok, The Regulation of Campaign Tactics in Representation Elections Under the National Labor Relations Act, 78 Harv.L.Rev. 38, 132–39 (1964).

For the reasons we have given, we decline to exclude from enforcement the NLRB's order to bargain on request.

■ We have weighed the question of modifying the enforcement order sought by NLRB in order to require an election within a relatively brief period after compliance. But a review of the cases convinces us that the determination of compliance (and of dissipating of the effects of unfair labor practices) is peculiarly within the discretion of the Board. Franks Bros. Co. v. N. L. R. B., supra; Brooks v. National Labor Relations Board, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954); N. L. R. B. v. Stow Manufacturing Co., 217 F.2d 900 (C.A. 2, 1954), cert. denied, 348 U.S. 964, 75 S.Ct. 524, 99 L.Ed. 751 (1955).

■ Further, it appears clear that following compliance respondent (or its employees) may petition for an election if in doubt about the union's majority. Labor Management Relations Act (Taft-Hartley Act) § 101, 61 Stat. 144 (1947), 29 U.S.C. § 159(c) (1) (A) (ii) (1965); 61 Stat. 144 (1947), 29 U.S.C. § 159(c) (1) (B) (1965); Brooks v. National Labor Relations Board, supra, 348 U.S. at 100–101, 75 S.Ct. 176. And under appropriate facts, the policy of the NLRB is to grant such petitions without consideration of the one year time limit applicable to bargaining rights based on certification following an election. Arm-

co Drainage & Metal Products, Inc., 116 N.L.R.B. 1260 (1956); Ruffalo's Trucking Service, Inc., 114 N.L.R.B. 1549 (1955).

Enforcement of the order of the National Labor Relations Board is granted.