NATIONAL LABOR RELATIONS
BOARD, Petitioner,
v.
MOCK ROAD SUPER DUPER, INC.,
Respondent.
No. 17654.

United States Court of Appeals
Sixth Circuit.
April 15, 1968.

Abigail Cooley Baskir, Atty., N.L.R. B., Washington, D. C., for petitioner; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, George B. Driesen, Atty., N. L. R. B., Washington, D. C., on brief.

Joseph M. Millious, Columbus, Ohio, for respondent; Armstrong, Speer, Mackey, Millious & Carmack, Columbus, Ohio, on brief.

Before O'SULLIVAN and PECK, Circuit Judges, and McALLISTER, Senior Circuit Judge.

JOHN W. PECK, Circuit Judge.

This matter is before us under the prayer of the National Labor Relations Board for an order enforcing its order against the respondent operator of a

supermarket, hereinafter usually referred to as the "Board" and the "Market" respectively. The Board found the Market guilty of violations of Section 8 (a) (1) of the National Labor Relations Act (29 U.S.C. §§ 151 et seq.) by threatening and coercing its employees and by promulgating and maintaining rules prohibiting employees from soliciting union membership in nonpublic, nonworking areas during nonworking time, and of violating Section 8(a) (3) and (1) of the Act in discharging employee Barry Hooper for union activities.

The record establishes that James Jeffers is the sole stockholder in the Ohio corporation which owns the Market, a food store in Columbus, Ohio. Hooper was hired in 1961 as a "carry out boy" and by 1964 had advanced to a full-time position and department manager. By August, 1964, Barry had become an active organizer for the Retail Clerks Union Local 1059, Retail Clerks International Association, AFL–CIO (hereinafter the "Union"). Later that same month, during which he was actively engaged in organizational pursuits, Hooper was discharged. The stated reasons for the discharge were that Hooper "wasn't doing what they wanted done," that he "showed a lack of interest" in his work, and "hadn't been showing proper respect for [a store manager]."

The following day a union representative advised Jeffers that the Union had cards signed by a majority of the employees (exclusive of the meat department employees) authorizing it to act as their bargaining agent, and Jeffers replied that he doubted that the Union had a majority. He then began questioning some employees concerning union sympathies, and during that process he expressed the hope that one employee to whom he spoke had not voted for the Union, warned another "there is going to be some changes made if [the Union] did get in" and stated to a third that

there would be a curtailment of employment freedom with company rules "a lot stricter." He further stated that the Market "would probably have to let some of the part-time help go." On August 24 the Market's attorney called the union representative advising that it wanted an "election to be conducted in the store," to which the Union refused to agree. The Market then posted a notice on the bulletin board stating, "I doubt that a majority of you want a union, but so as to be sure I have asked by a petition that the Labor Relations Board conduct an election at this store." The next day the Market received notice of the filing of an unfair labor practice charge by the Union, which under Board policy precluded the holding of an election during its pendency.

At the time involved the Market had twenty-eight employees. It was agreed three should be excluded from the eligibility list because they were daughters of James Jeffers, and three were excluded on the basis of the Trial Examiner's determination that they were supervisors. One other employee was at that time on a leave of absence, leaving a total of twenty-one. Eleven signed cards authorizing the Union to act as their agent, and it is noted that the Market makes no complaint as to the use of such cards for the purpose of designating a bargaining agent and offered no evidence tending to taint signature procurement.* One signer was one of those determined by the Trial Examiner to be a supervisory employee, leaving ten unchallenged cards. Obviously ten is not a majority of twenty-one, but the Board further determined the appropriate unit for bargaining to include only eighteen employees, having stricken another three as meat department employees. Using the questionable but here unchallenged method of majority determination by authorization cards the Board found the Union to have a majority in the reduced

---

\* The situation thus differs from that presented to this Court in N.L.R.B. v. Cumberland Shoe Corp., 351 F.2d 917 (1965) and in N.L.R.B. v. Winn-Dixie Stores, Inc., 341 F.2d 750 (1965), cert. denied, 382 U.S. 830, 86 S.Ct. 69, 15 L.Ed.2d 74. See also Pizza Products Corp. v. N.L.R.B., 369 F.2d 431 (6th Cir. 1966).

unit, and on that basis found the Market guilty of a refusal to bargain. Under the circumstances established by the record the determination that the meat department employees should be excluded seems a strained conclusion and the Board's explanation for its position is not entirely satisfactory, but the Supreme Court has stated:

> "The issue as to what unit is appropriate for bargaining is one for which no absolute rule is laid down by statute, and none should be by decision. It involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed. While we do not say that a determination of a unit of representation cannot be so unreasonable and arbitrary as to exceed the Board's power, we are clear that the decision in question does not do so. That settled, our power is at an end." Parkard Motor Car Co. v. N. L. R. B., 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947).

The Supreme Court had earlier held that the Board has a wide discretion in its selection of an appropriate bargaining unit and that its decision is conclusive unless arbitrary or capricious. Pittsburgh Plate Glass Co. v. N. L. R. B., 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941). See also N. L. R. B. v. Royal Oak Tool and Machine Co., 320 F.2d 77, 82 (6th Cir. 1963); and N. L. R. B. v. Salant & Salant, Inc., 171 F.2d 292, 293 (6th Cir. 1948). Whatever our independent views might have been, we cannot say that the Board's exclusion of the meat department employees from the bargaining unit was unreasonable and arbitrary, and without their names the authorization cards represented a majority of the appropriate unit's employees.

We are similarly of the view that there is substantial evidence on the record as a whole to support the Board's finding that there was an unlawful threatening and coercing by the Market of its employees in violation of Section 8(a) (1) of the Act and of Section 8(a) (3) and (1) of the Act in discharging employee Barry Hooper. While at the very least strong doubt was cast upon the manner in which Hooper performed his duties, and while absent other circumstances it would appear probable that sufficient cause for discharge existed, a review of the chronology lends enough support to the Board's finding that he was fired because of union activities to prevent that finding from being here voided. N. L. R. B. v. Elias Bros. Big Boy, Inc., 325 F.2d 360, 364 (6th Cir. 1963); N. L. R. B. v. Tru-Line Metal Products Co., 324 F.2d 614, 615–616 (6th Cir. 1963). The Board's finding of threats and coercion presents a closer question, but it is a fact that the interrogation of employees as to "whether they signed cards or what their ideas were" followed an offer to have a neutral outside party conduct a signature check of the authorization cards. It further appears that some of the statements made in the course of the interrogation could be construed as threatening or coercive, and we therefore again conclude that the Board's finding must be permitted to stand. N. L. R. B. v. Bin-Dicator Co., 356 F.2d 210, 213 (6th Cir. 1966); Surprenant Manufacturing Co. v. N. L. R. B., 341 F.2d 756, 761 (6th Cir. 1965); N. L. R. B. v. Zimnox Coal Co., 336 F.2d 516, 517 (6th Cir. 1964); N. L. R. B. v. Flemingsburg Mfg. Co., 300 F.2d 182, 184 (6th Cir. 1962); United Fireworks Mfg. Co. v. N. L. R. B, 252 F.2d 428 (6th Cir. 1958).

The remaining issue concerns the finding of the Board (which reversed the Trial Examiner on this point) that the Market was guilty of a Section 8(a) (1) violation in the promulgation of a rule. This rule appears in a booklet entitled "Your Guide Post With Super Duper, Inc." which has been distributed to each employee of the Market since about 1961, and it reads as follows:

> "SELLING AND SOLICITING
> "For your protection, soliciting in any form will not be permitted on store premises. Raffles, pools, collections

for any purpose, or the sale of tickets or merchandise, either by employees or outsiders, may not be conducted without the express permission of the store manager.

"There are no exceptions to this regulation and you may request evidence of authorization from anyone who is engaged in selling or soliciting on the store premises. If anyone is found violating this rule, please notify the store manager."

The Board reversed the conclusion of the Trial Examiner that the "rule is not violative of the Act," without citation of any court decision, and without attempting to read the provision it refers to as a "no-solicitation rule" in context. No discussion whatever is offered as to how the Board reached the conclusion that union solicitation could be reasonably included within the language above quoted, announcing only that the "Rule on its face was violative of Section 8(a) (1) of the Act."

In its attempt to support this determination the Board in its brief cites a number of cases. None, however, is in point. In Montgomery Ward & Co. v. N. L. R. B., 339 F.2d 889, 893 (1965), this Court held that a " 'no-solicitation' rule *as applied* was illegal." (Emphasis supplied.) In the present case the Board in its decision and order explicitly found that "there was no evidence that Respondent had ever attempted to enforce the rule." Where the entire rule in question read, "Soliciting of any type cannot be permitted in the factory or offices," and "[a]n employee persisted after being warned of the rule in soliciting union membership in the plant," the Supreme Court affirmed the finding of a violation. Republic Aviation Corp. v. N. L. R. B., 324 U.S. 793, 795, 65 S.Ct. 982, 89 L.Ed. 1372 (1945). Our recent decision in N. L. R. B. v. Challenge-Cook Brothers of Ohio, 374 F.2d 147 (1967) is without application. In a case which is also distinguishable from the present case, and which "the Board believes * * * was wrongly decided," the Court

of Appeals for the Fifth Circuit reached a conclusion which is at variance from *Challenge.* (Republic Aluminum Co. v. N. L. R. B, 374 F.2d 183 (1967).

In the rule here under consideration the word "soliciting" is used both in title and in content in conjunction with the word "selling," and only by a strained and artificial interpretation can any reference to a union solicitation be made. In the absence of any showing that an application of the rule to prohibit union solicitation has been made or contemplated it is held that the mere presence of the rule set forth above in the Market handbook does not constitute a violation of Section 8(a) (1) of the Act.

Enforcement of the Board's order, modified in accordance with this opinion, is granted.