**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PRICED–LESS DISCOUNT FOODS, INC., d/b/a Payless, Respondent.**

**No. 18241.**

United States Court of Appeals
Sixth Circuit.

Dec. 20, 1968.

Supplemental Order Feb. 27, 1969.
See 407 F.2d 1325.

Burton L. Raimi, N. L. R. B., Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Harold B. Shore, Attys., N. L. R. B., Washington, D. C., on brief.

Jonas B. Katz, Cincinnati, Ohio, for respondent, Daniel I. Rosenthal, Springfield, Ohio, on brief.

Before O'SULLIVAN, PHILLIPS and EDWARDS, Circuit Judges.

PHILLIPS, Circuit Judge.

The decision and order of the National Labor Relations Board in this proceeding are reported at 157 N.L.R.B. 1143. The Board petitions for enforcement of its order requiring the respondent to bargain on request by the Retail Clerks Union.[1] The issue before this

1. The Union involved is Retail Clerks Union, Local 1552, Retail Clerks International Association, AFL–CIO.

Court is whether a bargaining order is the proper remedy, in the absence of a § 8(a) (5) violation, for violations of § 8(a) (1) of the Act which had the effect of dissipating the Union's card majority and which destroyed the conditions for a fair N.L.R.B. representation election. We enforce the Board's order.

The employer is an Ohio corporation engaged in the operation of a retail food store in Springfield, Ohio. The Board found that on January 20, 1965, the Union held 23 valid authorization cards which designated it as bargaining agent. On that date the Union requested recognition and bargaining and offered to prove its majority status by a card check through an impartial third party. On January 25 the Company refused the request on the asserted ground that it had a good faith doubt as to the Union's majority and that it questioned the appropriateness of the unit.

During the eight day period between January 20 and January 28 twelve of the 24 employees who originally had executed Union cards signed letters withdrawing their Union authorizations. The Board found that the Company solicited the letters from employees and assisted in the preparation and mailing of the letters for the deliberate purpose of dissipating the Union's strength and to frustrate its employees' rights of self-organization in violation of § 8(a) (1) of the Act. The Company also was found guilty of other § 8(a) (1) violations, including coercive interrogation and promises of benefits for refraining from Union activities.

The Board said:

"We have found that Respondent engaged in widespread unfair labor practices violative of Section 8(a) (1) at the same time it was requesting that an election be conducted to determine the Union's majority status. Such misconduct could only have the effect of destroying the very conditions needed in order for a fair election to be held. Therefore, we are persuaded that Respondent had completely rejected the collective-bargaining principle and had merely sought an election in order to gain time within which to undermine the Union and dissipate its majority. As the Union did represent a majority of employees in the appropriate unit, under these circumstances only a bargaining order can adequately restore as nearly as possible the situation which would have existed but for the Respondent's unfair labor practices. Accordingly, we shall order Respondent, upon request, to bargain with the Union in the unit herein found appropriate." 157 N.L.R.B. at 1146.

■ The precise question before, this Court is whether the Board abused its discretion in imposing a bargaining order as a remedy for § 8(a) (1) violations on the facts of this case. The Board's discretion in shaping remedies is broad and the Courts are limited to determining whether the remedy is unlawful or is an abuse of discretion. See Franks Bros. Co. v. N. L. R. B., 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020; N. L. R. B. v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380; N. L. R. B. v. H & H Plastics Mfg. Co., 389 F.2d 678, 683–684 (6th Cir.). Bargaining orders traditionally are an accepted remedy for violations of § 8(a) (5), e. g., N. L. R. B. v. H & H Plastics Mfg. Co., 389 F.2d 678 (6th Cir.). However a bargaining order as a remedy for violations of § 8(a) (1), carrying with it recognition of the Union, is particularly dangerous where it may have the effect of imposing a union on employees contrary to their actual wishes. This danger points up the desirability of having Board supervised elections where they are possible.

■ One set of circumstances in which a bargaining order is proper as a remedy for § 8(a) (1) violations has become clear: (1) the Union in fact has obtained authorization cards from a majority of employees in an appropriate bargaining unit without misrepresentations or other unfair practices on its part and has requested bargaining; (2) the employer has dissipated significantly the Union's majority by the commission of

§ 8(a) (1) violations; and (3) a fair election cannot be had under all the circumstances of the particular case.

In such a case[2] a bargaining order would seem to be the only remedy which can restore the positions as they existed before the occurrence of the unfair labor practices. Thus in N. L. R. B. v. Delight Bakery, Inc., 353 F.2d 344 (6th Cir.), this Court enforced a § 8(a) (1) bargaining order as a proper remedy where the employer's acts had dissipated the Union's majority. In N. L. R. B. v. Mock Road Super Duper, Inc., 393 F.2d 432 (6th Cir.), where Board findings of violations of § 8(a) (1) and (3) were upheld, a bargaining order was again enforced.[3] See also N. L. R. B. v. Consolidated Rendering Co., 386 F.2d 699 (2d Cir.), and D. H. Holmes Co. v. N. L. R. B., 179 F.2d 876 (5th Cir.)

On the other hand, where the employer's violation did not dissipate the Union's majority and the Court was unable to conclude that the "unfair labor practices required a recognition order as opposed to the more democratic remedy of an election," the § 8(a) (1) bargaining order was refused enforcement. Pulley v. N. L. R. B., 395 F.2d 870, 878 (6th Cir.).

Similarly in N. L. R. B. v. Flomatic Corp., 347 F.2d 74 (2d Cir.), a § 8(a) (1) bargaining order was refused where the Union had not requested bargaining and the employer's violations were treated as not having dissipated the Union's majority. See also N. L. R. B. v. Better Val-U Stores of Mansfield, 401 F.2d 491 (2d Cir.).

The decision of this Court enforcing the bargaining order in N. L. R. B. v. Delight Bakery, Inc., supra, was based upon the following finding:

"In our instant case we have no doubt that the NLRB had a right on this record to conclude that respondent's illegal interference with its employees' rights to organize and bargain collectively did cause the union's loss of majority status. If this is so, it seems to be well within the NLRB's discretion to seek a remedy which would effectively restore the status quo ante. It seems most unlikely that a simple cease and desist order could be expected to accomplish this result." 353 F.2d at 347

The decision of this Court denying enforcement of the § 8(a) (1) bargaining order in Pulley v. N. L. R. B., supra, was based upon this finding:

"In the instant case the Board seeks to justify its recognition order on the grounds that the 8(a) (1) violations were so serious as to dissipate the union's majority and make a fair election impossible. However there is no proof in the record that Capitol's illegal activities had the effect of destroying the union's majority. As we stated before 9 of the 11 employees against whom 8(a) (1) violations were committed were strong union supporters. The unfair labor practices did not prevent other employees from signing authorization cards. Almost all of the authorization cards were signed during the period that Capitol committed its unfair labor practices, and 10 were signed after it ceased its illegal activities. Such evidence is contrary to any assertion that Capitol dissipated the union's majority. Furthermore the interrogations and the creation of an impression of surveillance were relatively minor in relation to those committed in cases where recognition orders were issued based solely on 8(a) (1) violations. It is difficult to con-

---

2. Lane Drug Co. v. N.L.R.B., 391 F.2d 812 (6th Cir.), cert. denied, 393 U.S. 837, 89 S.Ct. 114, 21 L.Ed.2d 108, is to be distinguished from the instant case by the fact that there the Board had found a § 8(a) (5) violation which was not enforced and there was no finding of a dis-

sipation of the Union's majority or of the absence of conditions for a fair election.

3. The Board's decision and order in *Mock Road Super Duper, Inc.* is published at 156 N.L.R.B. 983.

clude that in this case Capitol's unfair labor practices required a recognition order as opposed to the more democratic remedy of an election." 395 F. 2d at 878.

In the present case single purpose Union authorization cards were used, which are unambiguous in their language. No contention is made that signatures on the cards were obtained by misrepresentation.

There is abundant evidence in the record to support the finding of the Board that the Company solicited withdrawal of Union authorizations. Twelve employees executed letters in the Manager's office withdrawing their designations of the Union as their bargaining representative. The letters were signed and mailed within the eight-day period following the Union's demand for recognition. Although the letters contain language to the effect that the request for withdrawal of authorization was made of the employees' own free will and with no outside pressure, the evidence to the contrary is substantial. Solicitation, pressure and coercion are proved by convincing evidence. Ten letters were dated between January 20, when the Union demanded recognition, and January 25, the date the Company refused to recognize the Union. Two letters were dated within three days after the Company denied recognition.

All the letters were sent to the Union either by registered or certified mail. The letters were not mailed by the employees who signed them. Employees did not furnish the envelopes or postage for mailing. The handwriting of the Company's bookkeeper appears on many of the envelopes. The Company furnished the paper on which most if not all the letters were written. Copies of the letters were retained by the Company. The letters were prepared from a text furnished by management. As said by this Court concerning similar tactics in N. L. R. B. v. H. W. Elson Bottling Co., 379 F.2d 223, 225:

"[W]e can conceive of few more specific methods of interfering with employees' rights freely to choose or not to choose a bargaining representative than to have each summoned to the office of the employer and there to be asked to sign a company prepared statement withdrawing from the union."

This evidence supports the conclusion of the Board that the Company's solicitation of withdrawals of Union authorization cards was for the deliberate purpose of destroying the Union's strength. There can be no doubt that the Company accomplished this purpose. The Union was left with so few authorization cards that it no longer had sufficient strength to request an election. When an employer resorts to such flagrant unfair labor practices, the Board acts within its authorized discretion in issuing a bargaining order so as to restore as nearly as possible the situation which would have existed but for the Company's unfair labor practices. In this case the usual cease and desist order could hardly be truly remedial.

■ Although we grant enforcement of the bargaining order under the record in the present case, we emphasize that this Court considers an election a better procedure for employees to express their choice as to unionization than the use of authorization cards. Both the Board and this Court have described authorization cards as a "notoriously unreliable method of determining majority status of a union." Pizza Products Corp. v. N. L. R. B., 369 F.2d 431, 436 (6th Cir.), quoting from Sunbeam Corp., 99 N.L.R.B. 546, 550–51.

■ Nevertheless, when a majority of employees in the appropriate unit have signed valid Union authorization cards and the employer has destroyed the Union's majority by soliciting and obtaining cancellation of cards by coercive methods in flagrant violation of § 8(a)(1), thereby rendering it impossible for the Board to conduct a fair representation election, as in the present case, this Court has no choice but to enforce the bargaining order.

As was noted in N. L. R. B. v. Delight Bakery, Inc., 353 F.2d 344 (6th Cir.), there is a safeguard against the danger of imposing a union upon employees which a majority of them may not want. The employees have a right to petition for a decertification election. 29 U.S.C. § 159(c) (1) (A) (ii) (1965).

In N. L. R. B. v. Ben Duthler, Inc., 395 F.2d 29, 34 (6th Cir.), this Court said: "The purpose of the Board is to protect the bargaining rights of employees, not the bargaining rights of the union."

We believe that the employees in a case such as this should be advised clearly of their right to petition for such an election. Therefore, we grant enforcement of the Board's order effective immediately but remand the case to the Board for formulation and distribution of an appropriate notice informing the employees of their rights under the statute and this order, including, but not limited to, their right of petition for a decertification election.

Enforcement granted.