**MODERN PLASTICS CORPORATION,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD,** Respondent.

No. 16954.

United States Court of Appeals
Sixth Circuit.

June 22, 1967.

Theophil C. Kammholz, Chicago, Ill., (Robert C. Claus, George P. Blake, Chicago, Ill., on the brief; Vedder, Price, Kaufman & Kammholz, Chicago, Ill., of counsel) for petitioner.

Harold B. Shore, Atty., N.L.R.B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Gary Green, Atty., N.L.R.B., Washington, D. C., on the brief) for respondent.

Before: O'SULLIVAN and CELEBREZZE, Circuit Judges, and NEESE *, District Judge.

## CELEBREZZE, Circuit Judge.

Modern Plastics Corporation (Company), seeks review of the decision and order of the National Labor Relations Board which found the Company violated Section 8(a) (2) and (1) of the National Labor Relations Act by supporting and dominating the Employees' Committee of Modern Plastics. The Board seeks enforcement of its order, which is reported at 155 N.L.R.B. No. 12. The charges against the Company were filed by District 39 of the International Association of Machinists, AFL-CIO, after it attempted to organize the Company's employees.

The Company is a Michigan corporation engaged in the manufacture, sale, and distribution of industrial and commercial plastic products. The Employees' Committee, since 1949, has served as a representative of the Company's hourly paid production and maintenance employees and over the years has engaged in negotiating with the Company a number of collective bargaining agreements.

In June, 1964, representatives of the Company and the Committee engaged in collective bargaining sessions under a mid-term modification clause in their agreements, which resulted in wage increases and other benefits for the employees. During these negotiations the charging party, the International Association of Machinists, sought to organize the Company's employees, and filed a representation petition with the Board's Regional Office. Because of the bargaining contract then effective between the Company and the Committee, the Regional Director decided that no election could then be conducted. Thereupon, on July 17, 1964, the International Association of Machinists filed unfair labor practice charges, which gave rise to this case, alleging that the Company "assisted, dominated, contributed to the support of, and interfered with the administration of the shop committee".

The Company's plant is divided into six groups with a Committee representative for each group. A Committee Chairman is elected for two years. The electoral procedure for selecting the Committee representatives and the Committee Chairman is set forth in the collective bargaining agreement.

The Committee receives no dues from its members, has no source of income and owns no property. The Committee does not operate under a constitution or by-laws. There is no evidence that the Committee held any membership meetings during the six-month period prior to the filing of the charges herein. However, there is evidence that Committee representatives met individually with employees, and proffered evidence of Committee membership meetings prior to the Act's six-month statute of limitations.

The Committee does hold monthly meetings with the Plant Manager. These meetings were first held at Holly's Grill and later at the Company's plant. When the meetings were held at Holly's Grill the Company paid for the food and

---

* Honorable C. G. Neese, United States District Judge, Eastern District of Tennessee, sitting by designation.

drinks. The Committee members were paid their regular wage rate when they attended these meetings. While these meetings were held to settle or adjust grievances, many grievances would be settled at a later time without further Committee participation. On several occasions, a Committee Chairman was refused time to discuss particular grievances with employees. The Committee met privately four or five times in 1964 prior to and in preparation for negotiation of a new collective bargaining agreement.

Committee members and the Committee Chairman were elected by secret ballot. The Company took no part in nominating any employee or urging any employee to run for office. Committee notices, election information and ballots were prepared and maintained by the Plant Manager's secretary. On one occasion a Committee Chairman asked Plant Manager Fletcher if the Committee could meet with all employees in the lunchroom at the end of the day shift. Mr. Fletcher denied this request, stating that this had been tried before and the employees did not respond. One Committee Chairman said the Company never told him how to run the Committee, but he was told what the past practices and procedures were.

On the basis of these facts, the Board ordered the Company to withdraw and withhold all recognition from and completely dis-establish the Employees' Committee as representative of any of its employees for the purpose of dealing in respect to grievances, labor disputes, wages, rates of pay, hours of employment or conditions of work. The Company was thus found to have violated Section 8(a) (1) of the Act, which provides in part that it shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 157 (choice of bargaining representative), and Section 8(a) (2) of the Act which provides in part that it shall be an unfair labor practice for an employer to dominate or interfere with the formation or administration of any labor organization, or contribute financial or other support.

The entire record must be reviewed, and the Board's order must be enforced if there is substantial evidence to support the Board's findings and inferences of Company domination. Universal Camera Co. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). The evidence here is limited to actions which occurred after the formation of the Committee, which the Board found to be a labor organization within the meaning of Section 2(5) of the Act.

The Board adopted the following statement of the Trial Examiner:

"I am persuaded by the credible evidence of witnesses called by both parties to this proceeding that despite the unlawful character of the Committee and despite Respondent's unlawful intrusions into its affairs, *nevertheless the employees whom the Committee represents have derived considerable benefit from its representations and none have been shown to have been dissatisfied either with the Committee itself or with the particular type of representation that it provided them.*" (Emphasis added)

Commenting on the restraint which should be exercised by a Court when the relations between the labor organization and the Company are harmonious, the Court, in Humble Oil & Refining Co. v. National Labor Relations Board, 5 Cir., 113 F.2d 85, said:

"* * * The Board is not made either guardian or ruler over the employees, but is only empowered to deliver them from restraint at the hands of the employer when it exists. If employer interference has been slight, and not coercive or oppressive, suppression of a

majority organization whose members are not complaining of interference would be an extreme step."

The evidence, taken in its entirety, may support the inference that the Employees' Committee was a weak organization. But the evidence clearly shows that this was the desire of the employees. They were free at any time to refuse to accept any of the services rendered, and to control attendance at their meetings, without any threat or coercion or interference on the part of the Company. The Committee's primary function was to protect the rights of the employees and to negotiate a contract beneficial to the employees. This was accomplished.

■ Evidence of a weak labor organization alone, does not support an inference of Company domination. The evidence does not show that the Company exerted subtle and insidious control over ignorant or protesting employees.

■ There is a line between cooperation and domination, and the purpose of the Act is to encourage cooperation and discourage domination. Chicago Rawhide Manufacturing Co. v. National Labor Relations Board, 221 F.2d 165 (C.A. 7, 1955), Coppus Engineering Corp. v. National Labor Relations Board, 240 F.2d 564 (C.A. 1, 1957), General Engineering Co. v. National Labor Relations Board, 311 F.2d 570 (C.A. 9, 1962).

■ The employer-employee relationship itself offers many possibilities for domination, but active domination must be shown before a violation is established. Assistance or cooperation does not always mean domination. The Board must prove that the employer's assistance is actually creating Company control over the Union before it has established a violation of Section 8(a) (2). Chicago Rawhide Manufacturing Co. v. National Labor Relations Board, supra. The test of whether an employee organization is employer controlled is not an objective one but rather subjective from the standpoint of employees. National Labor Relations Board v. Sharples Chemicals, 209 F.2d 645 (C.A. 6, 1954).

All of the acts cited by the Board as unfair labor practices in this matter actually show no more than the Company's cooperation with the Committee, to the Committee's satisfaction and for the benefit of the employees. It is true that the acts rendered might be the means by which the Company could exert pressure, but we do not find any substantial evidence in the record that it was so used by the Company, or was so considered by the employees.

■■ Here the Company did cooperate and give assistance to the Employees' Committee. The employees elected their committeemen, and the Committee presented grievances to the Company and the Committee held private sessions in preparation for contract negotiations. The Committee negotiated a contract with the Company containing increased benefits to the satisfaction of the Company employees.

Finally, the record contains no showing of anti union bias by the Company nor does the record contain any evidence of employee dissatisfaction with the manner in which the Committee represented them. As a matter of fact, as stated earlier, the Examiner found that the Committee adequately represented its members. The complaint filed herein is not by employees of the Company, but rather by an outside Union seeking to represent these same employees. While such outside group can legally raise such an issue, we believe the evidence should be carefully scrutinized, especially where the issue of domination is not raised by the internal organization.

■ A prime purpose of the Act is to foster industrial peace through collective bargaining. For many years the Company and the Committee have worked in harmony with that purpose to the benefit of the employees. To permit the Board to abort this relationship because an outside Union wants to take over, in the face of lack of substantial evidence of domination, would be a disservice to the

Act, as well as to the employees which the Act seeks to protect.

A decree will be entered setting aside the Order of the Board.