**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**H & H PLASTICS MANUFACTURING CO., Respondent.**

**No. 17496.**

United States Court of Appeals
Sixth Circuit.

Feb. 15, 1968.

John I. Taylor, Atty., N.L.R.B., Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Lawrence M. Joseph, Atty., N.L.R.B., Washington, D. C., on the brief.

Jack R. Clary, Grand Rapids, Mich., for respondent, Warner, Norcross & Judd, Jerome M. Smith, Grand Rapids, Mich., on the brief.

Before McCREE and COMBS, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This cause is before the Court upon petition of the National Labor Relations Board for enforcement of its order, issued June 6, 1966, against H & H Plastics Manufacturing Co., respondent. The order is reported at 158 NLRB No. 138. This Court has jurisdiction of the proceeding, the alleged unfair labor practices having occurred in Grand Rapids, Michigan, within this judicial circuit. Section 160(e), Title 29, U.S.C. The Board determined that the respondent committed unfair labor practices in violation of Sections 158(a) (1), (2) and (5), Title 29, U.S.C.

H & H Plastics Manufacturing Co. (H & H Plastics) is an Illinois corporation in the business of manufacturing, selling, and distributing plastics and plastic products, having a plant in Grand Rapids, Michigan. During the times involved herein, the president of H & H Plastics was Raymond Hummel, Sr., who was semi-retired and only partially engaged in the management of the company. His two sons, Raymond Hummel, Jr. and James Hummel, were the two vice presidents of the company and primarily responsible for its operations. Milton Spaan was the comptroller. The union which seeks recognition is Local 406, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the union).

A very brief summary of the factual background in which the incidents, to be hereafter discussed, occurred is as follows: In June or July, 1964, the "Employees' Committee—H & H Plastics Manufacturing Co.," hereafter referred to as the committee, was formed. On April 13, 1965, Henry Kersten, Jr., an employee of H & H Plastics, approached union business agent Robert Anderson in an attempt to begin a union organizational campaign. The campaign began the following day with the assistance of employees Harold Jones and Adrian Potter. On April 19, 1965, Anderson and another business agent of the union delivered a written request for recognition to H & H Plastics, claiming to represent a majority of its employees. On April 21, 1965, the attorney for respondent wrote the union stating that respondent had a good faith

doubt as to the majority status of the union and refused to bargain collectively. On April 23, 1965, the union filed a petition for certification for representatives of all production and maintenance employees and truckdrivers at respondent's Grand Rapids, Michigan plant. Respondent stipulated that this is an appropriate bargaining unit. On June 4, 1965, a consent election was held under Board auspices which the union lost by a vote of 25 to 9. On June 10, 1965, the union filed objections to conduct affecting the results of the election. On June 16, 1965, the union filed charges of unfair labor practices against respondent. Following a hearing on the consolidated case, the trial examiner issued a recommended order which was adopted by the Board as its final order of June 6, 1966, and which is the basis of the Board's petition for enforcement.

■ About a week and a half after she signed a union authorization card, bib room employee, Dorothy Kangas, told Raymond Hummel, Sr., that things were going extremely well and that there were a lot of bib orders. Dorothy Kangas testified that Raymond Hummel, Sr., replied by stating "I am going to move them right out of town." Mr. Hummel denied making such a statement. The Board credited the testimony of Dorothy Kangas and held that the remark of Raymond Hummel, Sr., was a threat in violation of Section 8(a) (1) of the Act. (Section 158(a) (1), Title 29, U.S.C.) Although this is an isolated remark to only one employee, we hold that this finding of the Board is supported by substantial evidence. Section 160(e), Title 29, U.S.C.

The Board also found respondent to have committed unfair labor practices in violation of Sections 8(a) (1) and (2) of the Act (Section 158(a) (1) and (2), Title 29, U.S.C.), by aiding, assisting, interfering and dominating the Employees' Committee. The Board held that the committee was a labor organization within the meaning of Section 2(5) of the Act,[1] (Section 152(5), Title 29, U.S.C.), and the respondent did not except to this finding. The problem of managerial interference and domination is not new to this Court. Among the factors which this Court has, in the past, considered significant in determining the existence of unlawful management domination of a labor organization are the following: lack of any written governing instrument and lack of any independent means of financial support on the part of the labor organization, the fact that its meetings were held only on company property, the attendance at these meetings of high management representatives, the taking and distribution of minutes by a management official, the fact that meetings could be called by a management official, the fact that employees were paid for the time spent at meetings, management participation in elections, management preparation and distribution of ballots, management determination of employee electoral units, management determination of time of election, managerial prerogatives which may affect the status of an employee for election purposes (such as promotion, transfer and discharge), absence of independent legal advice on part of labor organizations and general reliance on the advice of management for its functioning and activities. N. L. R. B. v. General Shoe Corp., 192 F.2d 504 (C.A. 6) cert. den. 343 U.S. 904, 72 S.Ct. 635, 96 L.Ed. 1323; N. L. R. B. v. Sharples Chemicals, Inc., 209 F.2d 645 (C.A. 6); N. L. R. B. v. Oliver Machinery Corp., 210 F.2d 946 (C.A. 6); N. L. R. B. v. Chardon Telephone Company, 323 F.2d 563 (C.A. 6); N. L. R. B. v. Western Reserve Telephone Company, 323 F.2d 564 (C.A. 6). This catalogue of features indicative of domination is not intended to be complete and the resolution of the issue depends on the facts and circumstances of each particular case.

1. "The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

■ The question which we must now decide is whether substantial evidence exists in the record as a whole to support the Board's finding of unlawful assistance, aid, interference and domination. Section 160(e), Title 29, U.S.C. As a general rule we are bound by the Board's determination of witnesses' credibility. N. L. R. B. v. Challenge-Cook Brothers of Ohio, Inc., 374 F.2d 147 (C.A. 6); Keener Rubber, Inc. v. N. L. R. B., 326 F.2d 968 (C.A. 6), cert. den. 377 U.S. 934, 84 S.Ct. 1337, 12 L.Ed.2d 297.

Upon consideration of the uncontradicted and credited evidence in the record, we conclude that substantial record evidence exists to support the Board's findings on this issue. The committee had no formal charter, constitution or other written instrument of government. No membership cards were distributed and no dues were collected from employees. All meetings of the committee were held on respondent's premises, and management was present at most, if not all, of its meetings. After the first few meetings, Comptroller Spaan took minutes, had them typed up and posted on the company's bulletin boards. Employee representatives on the committee lost no pay when they attended meetings during working hours. However, they did not receive any overtime for those meetings which lasted beyond the close of working hours. Management was able to and did convene committee meetings. Inasmuch as the employee representatives were admittedly inexperienced and unprepared to organize and run the committee, management was available to and did provide valuable assistance and guidance to the representatives. Management also aided the committee in conducting its elections. Ballots for at least one election were prepared by Comptroller Spaan's office and distributed in the pay envelopes of employees. Spaan also helped tally and post the election results. The evidence indicates that on one occasion management ordered an election after one employee representative left the employ of H & H Plastics. On another occasion there is testimony that management decided to have a representative elected solely from the extrusion department where previously the extrusion department was part of a multi-department electoral unit. Following a tie vote in one election, management appears to have suggested a run-off election for representative. The minutes of a committee meeting prepared by Spaan indicate that one of the topics for discussion was a forthcoming election for new employee representatives.

In Modern Plastics Corporation v. N.L. R.B., 379 F.2d 201 (C.A. 6), this Court reversed a Board finding of unlawful domination of an employee committee by management. There, such factors as lack of anti-union bias on the part of management, absence of any evidence of employee dissatisfaction with the manner in which the employees' committee represented them and a finding of adequate representation by the committee were significant in determining that unlawful domination did not exist. These factors are clearly absent in the case at bar. In addition, unlike in *Modern Plastics,* there is no evidence of private meetings of the committee to prepare for collective bargaining with management.

■ Respondent argues that the assistance it gave the committee was merely a courtesy and did not amount to unlawful interference or domination. However in view of the character of the respondent's activity outlined above we cannot agree. Respondent seems to further assert that the only time period which can be considered in this proceeding is the time between the commencement of the union's organizational campaign on April 13, 1965, and the election on June 4, 1965. However relevant these dates may be in relation to the validity of the election, they have no bearing on the appropriateness of the Board's finding involved herein. Therefore we hold that there is substantial evidence on the record to support the Board's finding that H & P Plastics unlawfully aided, assisted, interfered with and dominated a labor organization in violation of Section 8(a) (1) and (2) of the Act. (Sec-

tion 158(a) (1) and (2), Title 29, U.S. C.)

The Board also found that respondent unlawfully refused to recognize and bargain with the union following demand for recognition made on April 19, 1965. The union claims that on that date it had signed authorization cards from 23 of the 34 employees in the stipulated appropriate bargaining unit. No claim is made that the cards were ambiguous and did not clearly indicate that its purpose was to secure recognition. Respondent contests the validity of ten of these cards [2] and claims that they were secured through unlawful misrepresentation that they were needed to secure an election. Harold Jones claims that he signed his card under the impression that it was for an election and without reading its contents. Jones was one of three employees who solicited cards on behalf of the union. He testified that Robert Anderson, the union business agent, told him that the sole purpose for securing authorization cards was to obtain an election. Jones claims that this statement was made to him on April 14, 1965, in the presence of two other employee solicitors and on April 17, 1965, at a union meeting attended by six other employees. Both Anderson and Henry Kersten, Jr., the chief employee solicitor for the union, testified that Anderson told both the solicitors and the employees present at the April 17, 1965, meeting that recognition could be achieved either by voluntary recognition by management, recognition following an independent card check to determine majority status or by an election. The Board, in its proper discretion, credited Anderson and Kersten and disbelieved Jones. N.L.R.B. v. Challenge-Cook Brothers of Ohio, Inc., supra. Inasmuch as the credited evidence indicates that the card signed by Jones was obtained without misrepresentation, his card was properly counted by the Board in determining majority status. Anderson also testified that Robert

Young and Judy Hamm signed their cards at the April 17th meeting where no credited misrepresentations were made to employees. Judy Hamm testified that she signed her card at this meeting and although she stated that Anderson told them that the card was to secure an election she was not able to remember two-thirds of the other things said at the meeting. There is, therefore, no basis on which the cards of Young and Hamm may be invalidated. Jones claims that he secured the signatures of Linda Harlan, Joyce Rischow, and Patricia Sharp by misrepresenting that the purpose of the cards was to secure an election. The Board, however, credited the testimony of Kersten that he solicited the signatures of these employees. Credibility being a matter for the Board, we may not disturb this finding.

■ There is substantial evidence to support the conclusion that six of the ten challenged cards were validly obtained and may be counted in determining the union's majority on April 19, 1965. Therefore, even if the remaining four cards were illegally obtained, as claimed by respondent, the union would still be left with a clear majority of 19 employees out of a unit of 34. Since the validity of no other cards was attacked, we affirm the Board's holding that the union had a majority of signed authorization cards from respondent's employees on the date recognition was requested. Wausau Steel Corporation v. N.L.R.B., 377 F.2d 369 (C.A. 7).

■ Even if the union validly represented a majority of respondent's employees on the date it requested recognition, respondent cannot be guilty of unlawfully refusing to recognize and bargain with it, if it had a good faith doubt as to the majority status of the union. Peoples Service Drug Stores, Inc. v. N.L.R.B., 375 F.2d 551 (C.A. 6), reversing Board's finding of lack of good faith;

2. The cards of Ron Sremba, Jack Kruizinga, Robert Young, Harold Nabors, Judy Hamm, Linda Harlan, Joyce Rischow, Patricia Sharp, Edward Hewitson and Harold Jones.

Pizza Products Corporation v. N.L.R.B., 369 F.2d 431 (C.A. 6), also reversing Board's finding of lack of good faith; N.L.R.B. v. Cumberland Shoe Corporation, 351 F.2d 917 (C.A. 6), affirming Board's finding of lack of good faith; N.L.R.B. v. Winn-Dixie Stores, Inc., 341 F.2d 750 (C.A. 6), cert. den. 382 U.S. 830, 86 S.Ct. 69, 15 L.Ed.2d 74, affirming Board's finding of lack of good faith. Upon being presented with a written request for recognition, the credited testimony of two union business agents, Anderson and Harry Nuberg, was to the effect that Raymond Hummel, Sr., said he would close the plant down and move out of town. This same threat was made about a week and a half later to employee Dorothy Kangas and was the basis for the previously discussed Section 8(a) (1) violation. Respondent continued to deal with the management dominated committee subsequent to the union's request for recognition. The minutes of those meetings reveal that the topics discussed included wages and other conditions of employment. Furthermore, at a mass employee meeting held on May 28, 1965, seven days prior to the Board supervised representational election, the respondent told the assembled employees that it had a little extra money and that something would be done to benefit the employees. In addition the respondent talked about pension plans and profit sharing. The fact that pension plans and profit sharing was discussed earlier is immaterial in determining whether the discussion on May 28, 1965 was for the purpose of undermining the strength of the union and demonstrated a lack of good faith on the part of respondent.

Respondent bases its assertion of good faith on the fact that there was a lot of union talk at the plant and upon comments made to Raymond Hummel, Jr., by two employees, who had earlier signed cards, which indicated that they presently had reservations about union representation.

 It is only natural that during a union organizational campaign that there would be a great deal of talk about the union among employees. Further we cannot say that the Board was incorrect in refusing to find good faith based upon the expressed thoughts of only two employees out of a group of 23 signers. There is no indication on the record that management discovered any of the alleged misrepresentations made by the union in soliciting cards prior to April 21st, the date of respondent's rejection and the date on which respondent's good faith must be found. If facts are open to conflicting inferences, we are not at liberty to draw an inference different from the one drawn by the Board, even though it may seem more plausible and reasonable to us. Universal Camera Corporation v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; N.L.R.B. v. Walton Mfg. Co., 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829. In view of respondent's actions during the period subsequent to the request for recognition, we hold that substantial evidence existed to support the Board's finding that respondent did not have a good faith doubt as to the union's majority status on April 21, 1965. Therefore, we affirm the holding of the Board that the respondent unlawfully refused to recognize and bargain with a labor organization representing the majority of its employees in violation of Sections 8(a) (1) and (5) of the Act. (Section 158(a) (1) and (5), Title 29, U.S.C.)

 The Board set aside the election of June 4, 1965, and ordered respondent to cease and desist from threatening to move out of town, from dominating, assisting, aiding and interfering with the committee, and upon demand to recognize and bargain collectively with the union and to post the usual notices. The respondent claims that the Board should not have ordered it to recognize and bargain collectively with the union, but should have ordered another election. The Board is vested with considerable discretion to formulate an appropriate order to remedy unfair labor practices in cases before it. Local 60, United Brotherhood of Carpenters & Joiners of America, AFL-CIO v. N.L.R.B., 365 U.S.

651, 81 S.Ct. 875, 6 L.Ed.2d 1; International Ass'n of Machinists, Tool and Die Makers Lodge No. 35 v. N.L.R.B., 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50, rehearing den. 311 U.S. 729, 61 S.Ct. 314, 85 L.Ed. 474. See, Irving Air Chute Company v. N.L.R.B., 350 F.2d 176 (C.A.2). Only when that discretion has been abused are we permitted to deny enforcement and order an alternative remedy. The Board's position in this case is that respondent's conduct, in continuing to deal with the committee and promising certain monetary benefits seven days prior to the representational election, destroyed the majority that the union possessed on April 19th, when recognition was demanded and would have continued to possess in the absence of such conduct. The Board determined that the only effective remedy for such conduct was an order to recognize and bargain with the union. Under the circumstances of this case, we cannot say that such an order was inappropriate and an abuse of discretion.

The Board's petition for enforcement of its order will be granted.