**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FASHION FAIR, INC., Cinbo, Inc., and Lois Price of Ohio, Inc., Respondents.**

**No. 17894.**

United States Court of Appeals
Sixth Circuit.

July 30, 1968.

Julius Rosenbaum, N.L.R.B., Washington, D.C., for petitioner; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Atty., N.L.R.B., Washington, D.C., on brief.

Jonas Katz, Cincinnati, Ohio, for respondents; Kasfir, Heckerman & Hood, Cincinnati, Ohio, on brief.

Before McCREE and COMBS, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This cause is before the Court upon petition of the National Labor Relations Board for enforcement of its order, issued April 12, 1966, against Fashion Fair, Inc., Cinbo, Inc. and Lois Price of Ohio, Inc., hereafter collectively referred to as respondents. The Board's order and decision are reported at 157 NLRB 1645. This Court has jurisdiction of the proceeding, the alleged unfair labor practices having occurred in Owensboro, Kentucky, within this judicial circuit. Section 160(e), Title 29, U.S.C. The Board determined that respondents committed unfair labor practices in violation of Section 8(a) (1), (3) and (5) of the Act and ordered respondents to cease and desist from engaging in certain unlawful activity, to offer full and immediate reinstatement, with back pay, to one James Black, and upon request to recognize and bargain collectively with the Retail Clerks Union, Local No. 445, chartered by the Retail Clerks International Association, AFL–CIO, hereafter referred to as the union.

Fashion Fair, Inc., is an Ohio corporation which operates a chain of discount department stores, including one in Owensboro, Kentucky. Cinbo, Inc. and Lois Price of Ohio, Inc. are Ohio corporations which operate leased departments in discount department stores, including ones in Fashion Fair's Owensboro store. It is conceded that these three corporations, by virtue of their common control of the incidents of employment, are joint employers of the employees of the Owensboro store.

In early September, 1964, James Black received and distributed union authorization cards to his fellow employees. By September 24, 1964, 12 of the non-supervisory employees in the uncontested appropriate bargaining unit had signed authorization cards. On September 24th,

the union mailed a letter to respondents advising that it represented a majority of their employees, offering to submit to an independent card check and requesting recognition and collective bargaining. The respondents received this letter on September 28, 1964, and responded the same day, as follows:

"We doubt your claim of representing the majority of our employees in our store in Owensboro, Kentucky. For that reason we cannot deal with you at this time, until you are so certified by the Federal Government Agency charged with the responsibility for such matters."

The union filed a representation petition on October 8, 1964. The union subsequently lost the election which was held on December 28, 1964, by a vote of 14 to 10. On January, 4, 1965, the union filed timely objections to the election alleging that respondents' announcement of a sick-pay policy, misrepresentations in a campaign letter, Christmas party and bonus unlawfully interfered with its outcome. On the same date the union also charged the respondents with committing unfair labor practices in violation of Section 8(a) (1) by threats, unlawful interrogation, promises of benefits, announcement of a sick-pay policy, misrepresentations in a campaign letter and giving a Christmas party and bonus, of Section 8(a) (3) by discharging employee Black and of Section 8(a) (5) by refusing to recognize and bargain with the union. The trial examiner consolidated the representation petition case and the unfair labor practice case for purposes of hearing and decision.

■ The record considered as a whole, fully supports the Board's conclusion that respondents violated Section 8(a) (1) of the Act by "threatening employees with discharge for engaging in organizational activities, by interrogating employees as to organizational activities engaged in by themselves and others, and by promising benefits to employees if they refrained from giving support to the Union."

■ The Board found that respondents discriminatorily discharged employee James Black in violation of Section 8(a) (3) of the Act. James Black was the most active supporter of the union among respondents' employees and respondents were admittedly aware of his activities. Respondents argue that Black was discharged for cause and not because of his union activity. Store Manager Rosner testified that he discharged Black, in part, upon the basis of an evaluation report filed by Supervisor Tipton, in which she stated that Black was neglectful in his work, that his department was kept in an unsatisfactory condition and that he was not doing the job he was getting paid to do. The report was filed on October 24, 1964, and Black was discharged on October 25th. However, the testimony of Supervisor Tipton, which was credited by both the Trial Examiner and the Board, raises a strong inference that Black's alleged inefficiency was merely a pretext for his discharge. N.L.R.B. v. Challenge-Cook Bros. of Ohio, Inc., 374 F.2d 147 (C.A.6); N.L.R.B. v. Adkins Transfer Co., 226 F.2d 324 (C.A.6); Wonder State Mfg. Co. v. N.L.R.B., 331 F.2d 737 (C.A.6). Supervisor Tipton, who at the time of the hearing was still in respondents' employ, testified that Black did his job as best he could under the difficult conditions imposed by Rosner and that the evaluation report was composed at Rosner's request. She further stated that she prepared the report three or four times before it was satisfactory to Rosner and that Rosner told her some of the things to write. It was reasonable for the Board to infer from this testimony and from the other facts surrounding the discharge that Black was discharged for his union activities and not for the reason alleged by respondents. We hold that there is substantial evidence in the record considered as a whole, to support the Board's finding that the

respondents violated Section 8(a) (3) and (1) of the Act by discharging employee James Black. Section 160(e), Title 29, U.S.C.; Universal Camera Corporation v. N.L.R.B., 340 U.S. 474, 71 S. Ct. 456, 95 L.Ed. 456.

The Board set aside the representation election, in part, because respondents violated Section 8(a) (1) of the Act by announcing and granting certain sick leave benefits which constituted "a change in the conditions of employment * * * which tended to interfere with the exercise of Section 7 rights by employees," and interfered with the outcome of the election. The Board found the discharge of James Black an additional ground for setting the election aside. The Regional Director dismissed the objection based upon misrepresentations in a campaign letter and the Board reversed the Trial Examiner and held that the objection based on the Christmas party and bonus did not constitute unfair labor practices or grounds for setting the election aside.

Respondents argue that it was improper for the Board to consider the discharge of Black as a ground for setting aside the election because it was not one of the objections to the election specifically filed by the union. Their position is that the Board cannot consider any action of the employer as a ground for setting aside an election unless such ground is specifically alleged by the union in its timely filed objections. Section 102.69 of the Board's Rules and Regulations, 29 C.F.R. 102.69 provides, in part:

"Within 5 days after the tally of ballots has been furnished, any party may file with the regional director an original and three copies of objections to the conduct of the election or conduct affecting the results of the election, which shall contain a short statement of the reasons therefor."

The Supreme Court has said with regard to unfair labor practice charges filed with the Board, that such charge "is not to be measured by the standards applicable to a pleading in a private lawsuit. Its purpose is merely to set in motion the machinery of an inquiry * * * Once its jurisdiction is invoked the Board must be left free to make full inquiry under its broad investigatory power in order properly to discharge the duty of protecting public rights which Congress has conferred upon it. There can be no justification for confining such an inquiry to the precise particularizations of a charge." National Labor Relations Board v. Fant Milling Co., 360 U.S. 301, 307–308, 79 S.Ct. 1179, 1183, 3 L.Ed.2d 1243. See also, National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799.

This Court recently said in N.L.R.B. v. Tennessee Packers, Inc., Frosty Morn Division, 6 Cir., 379 F.2d 172, 179, cert. den. 389 U.S. 958, 88 S.Ct. 338, 19 L. Ed.2d 364, "where related facts concerning misconduct are uncovered in the investigation of the objections filed by a party, it is proper for the Director and the Board to set aside an election on these facts." See also, N.L.R.B. v. Dal-Tex. Optical Company, 310 F.2d 58 (C. A.5).

█ In the instant case although the objections to the election filed by the union did not mention the discharge of Black, the unfair labor practice charges filed the same day, and thereafter consolidated for hearing and decision, alleged an 8(a) (3) violation based on his discharge. Respondents were fully aware of the charges leveled against them. Their defense to the 8(a) (3) violation would be identical to their defense to an objection based on the same pre-election conduct. Therefore they suffered no prejudice by the Board's ruling that Black's discharge was an additional ground for setting aside the election. We further conclude that there was substantial evidence to support the Board's conclusion that the conduct of respond-

ents in announcing its sick-leave policy, (itself an 8(a) (1) violation supported by substantial evidence), in the discharge of Black, and in the commission of the other 8(a) (1) violations sufficiently interfered with the representa-. tion election to warrant its being set aside.

The Board further held that respondents violated Section 8(a) (5) of the Act by refusing to recognize and bargain with the union and ordered them to do so upon request. The Board found that on September 28, 1964, the date of its request for recognition, the union possessed cards signed by 12 of respondents' 22 employees in the appropriate bargaining unit. As both the Courts and the Board recognize, the use of authorization cards is a "notoriously unreliable method of determining the majority status of a union." N.L.R.B. v. Flomatic Corporation, 347 F.2d 74 (C. A.2); Pulley v. N.L.R.B., 395 F.2d 870 (C.A.6, decided June 5, 1968); Peoples Service Drug Stores, Inc. v. N.L.R.B., 375 F.2d 551 (C.A.6); Sunbeam Corp., 99 NLRB 546. To base a recognition and bargaining order on such questionable procedures is " 'strong medicine' to be applied only 'with restraint.' " Lane Drug Co. v. N.L.R.B., 391 F.2d 812 (C. A.6).

 No contention is made that the authorization cards were not valid or legally obtained. However, the mere existence of a bare majority of valid authorization cards will not support the finding of an 8(a) (5) violation and a supporting recognition order, if the employer possessed a good faith doubt as to the union's majority status. Lane Drug Co. v. N.L.R.B., supra; N.L.R.B. v. H & H Plastics Manufacturing Co., 389 F.2d 678 (C.A.6). The burden is on the Board's General Counsel to prove that respondents did not possess a good faith doubt in refusing to bargain. Pulley v. N.L.R.B., supra; Lane Drug Co. v. N.L. R.B., supra; N.L.R.B. v. River Togs, Inc., 382 F.2d 198 (C.A.2). An employer's bad faith is not demonstrated mere-

ly by showing that he did not immediately set forth a reason for his good faith doubt, or in advancing no reason at all. Pulley v. N.L.R.B., supra. The question to be decided is whether at the time of the refusal to recognize, the employer accually possessed a good faith doubt, the burden being on the General Counsel to prove the negative.

 An employer is not obligated to submit to a card check by a neutral third party in order to preserve his claim of good faith doubt. N.L.R.B. v. Great Atlantic & Pacific Tea Company, 346 F.2d 936 (C.A.5); Lane Drug Co. v. N.L.R.B., supra. The commission of unfair labor practices, even though related to the union's organizational campaign, does not in and of itself negative an employer's good faith doubt. Peoples Service Drug Stores, Inc. v. N.L.R.B., supra; Montgomery Ward & Co. v. N.L. R.B., 377 F.2d 452 (C.A.6).

 Respondents, in the instant case, base their claim of good faith on their prior relations with the Retail Clerks Union. On six prior occasions, beginning in September, 1959, locals of the Retail Clerks, union have claimed to represent majorities of respondents' employees at various stores and in each instance the union either did not pursue its claim or lost the subsequent Board supervised election. Prior experience with attempted unionization is a significant factor to be considered in determining whether the employer possessed a good faith doubt. Lane Drug Co. v. N. L.R.B., supra; Peoples Service Drug Stores, Inc. v. N.L.R.B., supra; N.L.R. B. v. Johnnie's Poultry Co., 344 F.2d 617 (C.A.8); N.L.R.B. v. Hannaford Bros. Co., 261 F.2d 638 (C.A.1). The further fact that the union possessed a slim majority, (here a majority of one), is to be considered in determining good faith. Lane Drug Co. v. N.L.R.B., supra; N.L. R.B. v. Great Atlantic & Pacific Tea Co., supra.

This Court in its recent decision in Lane Drug Company v. N.L.R.B., supra, found, in somewhat similar circumstances, that the employer possessed a

good faith doubt as to the union's majority. In Lane Drug Co. v. N.L.R.B., supra, the employer engaged in similar illegal conduct including promises of benefit and the illegal discriminatory discharge of the most ardent union supporter among the employees. In that case the union also had a bare majority of valid authorization cards, and the employer claimed that its good faith was, in part, based on his prior experience with attempted unionization.

In the instant case we have the additional fact that the respondents' announcement and grant of its sick leave policy had the effect of interferring with the outcome of the representation election. While we do believe that this conduct warranted the Board in setting aside the election, we do not believe that it, along with the other unlawful conduct of respondents, demonstrated that at the time respondents first asserted their claim of good faith doubt, they did not in fact have an "honest" good faith doubt that the union did not represent a majority of its employees. We hold that the General Counsel has not satisfied his burden of proving the bad faith of respondents and that there is no substantial evidence to support the finding that respondents violated Section 8(a) (1) and (5) of the Act by refusing to recognize and bargain with the union.

Enforcement of the Board's order is granted as to the 8(a) (1) violations involving threatening employees with discharge for engaging in organizational activities, by interrogating as to organizational activities, by promising benefits to employees if they refrain from giving support to the union and by announcing and granting certain sick leave benefits, the 8(a) (1) and (3) violation involving the discriminatory discharge of James Black, and the Board's decision to set aside the representation election because of the above unlawful activity. We deny enforcement to that portion of the order finding respondents guilty of an 8(a) (1) and (5) violation and requiring that, upon request, they recognize and bargain collectively with the union.