**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**Z AND L LUMBER COMPANY OF COLUMBUS, Respondent.**

**No. 20458.**

United States Court of Appeals, Sixth Circuit.

April 2, 1971.

Weick, Circuit Judge, dissented in part and filed opinion.

Edward P. Wendel, N. L. R. B., Washington, D. C., for petitioner; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Edward P. Wendel, Attys., N. L. R. B., Washington, D. C., on brief.

Roy E. Brown, Akron, Ohio, for respondent; Hershey, Browne, Wilson, Steel, Cook & Wolfe, Akron, Ohio, on brief.

Before WEICK, CELEBREZZE and BROOKS, Circuit Judges.

PER CURIAM.

This is an application by the National Labor Relations Board for enforcement of its order issued on October 13, 1969, against the Z and L Lumber Company of Columbus, Ohio. The Board's Decision and Order are reported at 179 N.L.R.B. No. 11. It was the finding of the Board that the Company violated Section 8(a) (3) and (1) of the Act by discharging one of its employees, James Veeck, because of his union activities, and by refusing to reinstate four other employees, Gary Horn, Robert Scurlock, Charles Syar and Albert Ault, who walked off their jobs in concerted protest over the discharging of their fellow employee Veeck. The Board also found that the Company violated Section 8(a) (1) of the Act by interrogating employees about their union activity and the union activities of their fellow employees, and by threatening reprisals for engaging in union activities. The

Board's order required the Company to cease and desist from its unfair labor practices, to reinstate the five employees who lost their jobs, to reimburse them for loss of pay, and to post appropriate notices.

██ Initially it is concluded, upon review of the record as a whole, that there is substantial evidence to support the Board's findings that the Company violated the Act by coercively interrogating and threatening certain employees about their union activities. There is also substantial evidence to support the Board's findings that employee Veeck was, in fact, discharged because of his union activities and not for negligent performance of his job as the Company contended.

██ The principal challenge to the Board's decision is based upon its characterization of Robert Scurlock as an "employee" and not a "supervisor".[1] Thus, the Company argues that his reinstatement is not necessary because he was not an "employee" who ceased work to protest employer conduct toward fellow employees (Section 7 of the Act). The Company's further contention that the other three employees, Ault, Horn and Syar, simultaneously quit their jobs and did not walk off their jobs as a concerted protest is without merit.

Respecting the status of Robert Scurlock, the Company points to certain indicia of supervisory personnel that Scurlock allegedly possessed. It is argued that the record conclusively shows that Scurlock was a supervisor, or at least the record presents such a vague picture of Scurlock's position in the Company that it cannot be said that there is substantial evidence to support the Board's conclusion. Scurlock possessed, according to the Company, the following characteristics of a supervisor: a monthly bonus payment allegedly only received by supervisors; his duties were to oversee loading and checking in of materials at the lumber yard; he made two recommendations of persons to be hired; and he consulted with employees about work schedules.

The Board found other facts, however, which rebut the assertions of the Company, and indicate that Scurlock was simply an "employee". Thus, he received the monthly bonus while he worked as a salesman for the Company and before he began working in the lumber yard. He was working in the yard to correct a problem in the organization of the lumber which had developed. Admittedly, he did oversee loading and checking in of material, however, this certainly is not antithetical with the work performed by a "leadman" or "straw boss". He did make two recommendations of persons to be hired. One was hired and the other, his uncle, was not looking for work. Nowhere in the record is it found that Scurlock could hire directly. The fact that he consulted with employees about work schedules does not necessarily indicate he had supervisory power over directing what hours they were to work. See National Labor Relations Board v. City Yellow Cab Company, 344 F.2d 575, 581 (6th Cir. 1965).

It is clear "[w]hether they [these characteristics] were sufficient to constitute him [Scurlock] more than a 'straw boss' involves a question which is often difficult to determine, in the determination of which the Board necessarily has a large measure of informed discretion." Keener Rubber, Inc. v. National Labor Relations Board, 326 F.2d 968, 970 (6th Cir. 1964). See also, National Labor Relations Board v. Elliott-Williams Company, 345 F.2d 460, 463 (7th Cir. 1965). It also well established

---

1. 29 U.S.C. § 152(11) defines "supervisor" as follows:

"(11) The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

that where testimony is conflicting the credibility of witnesses is a matter for resolution by the Board. Westchester Plastics of Ohio v. National Labor Relations Board, 401 F.2d 903 (6th Cir. 1968); National Labor Relations Board v. State Stove and Manufacturing Company, 403 F.2d 656 (6th Cir. 1968); National Labor Relations Board v. H & H Plastics Manufacturing Company, 389 F.2d 678 (6th Cir. 1968); Keener Rubber, Inc. v. National Labor Relations Board, *supra*.

In light of the Board's experience and special expertise in these matters, see generally, Magnesium Casting Company v. National Labor Relations Board, decided February 23, 1971, 401 U.S. 137, 91 S.Ct. 599, 27 L.Ed.2d 735, notwithstanding the seriously conflicting testimony in this case, we cannot say that the evidence upon which the Board relies is insubstantial when viewed upon the record as a whole.

The order of the Board shall be enforced in full.

WEICK, Circuit Judge (dissenting in part).

I dissent from that part of the opinion which upholds the Board's finding that Robert Scurlock was a non-supervisory employee, rather than a foreman.

Manager Howard McGowan testified that Scurlock was a foreman of the warehouse and yard, and as such was paid a salary of $120 per week, plus overtime, and a supervisory bonus which averaged $150 per month.[1]

Employees Albert Ault, William Bach, Clarence Lewis and Arthur Conrad testified that Scurlock was their foreman. Scurlock's successor, foreman James Clark, also testified as to his duties as foreman. Ault was a witness for the General Counsel and testified upon cross-examination.

The only conflict in the evidence was the testimony of dischargees Scurlock and Veeck, who were obviously vitally interested in the outcome of the case. If Scurlock was a foreman the company had a right to discharge him without reference to any unfair labor practice. The Board should have taken into account their interest, but apparently it did not do so.

In Automation & Measurement Div., Bendix Corp. v. N.L.R.B., 400 F.2d 141 (6th Cir. 1968), the Regional Director, acting sua sponte, without any request from either the company or the union, made a wholesale determination, which we disapproved as arbitrary, that sixty of the company's job leaders were foremen. This determination of the Board was the converse of the result in the present case. The holding by the Board that the sixty leaders were foremen deprived them of the right to vote in a representation election.[2]

The special expertise usually claimed by the Board does not relieve us of our duty to carefully scrutinize the evidence,

1. Mr. McGowan testified:
"Q. Now, what capacity did Mr. Scurlock serve in out there?
"A. Mr. Scurlock was hired in as salesman and he worked out real good. I asked him to go out into the yard and take over as foreman of the warehouse and the yard.
"Q. Now what are the duties of the yard foreman?
"A. Well, he sees that stuff gets put away in the yard and he receives the stuff that comes into the yard. He takes care of—he has four or five employees out there, some part-time. He supervises these employees, sees that material gets loaded on the customers. And railroad cars come in, the unloaders report to him and he sees it gets unloaded. He brings the tally in to me. We send the papers into Pittsburgh. And just general supervision of the yard and warehouse.
"Q. Now, you say unloaders. Do you use other people to unload cars.
"A. We use Manpower or Kelly labor.
"Q. And you say all of these unloaders reported to Mr. Scurlock?
"A. Yes, Mr. Scurlock or Mr. Clark or—
"Q. Whoever was in that position?
"A. Right."

2. Bendix job leaders had been included in the bargaining units as non-supervisory employees in five prior representation cases.

or require us to accept the Board's findings, where, upon consideration of the record as a whole, we believe they are wrong. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1950).

In my opinion, the company did not commit a Section 8(a) (1) or 8(a) (3) violation with respect to foreman Scurlock, and I would deny enforcement as to him.